(17 P.3d 966)

No. 82,829

STATE OF KANSAS, *Appellee,* v. VINCENT E. SCOTT, *Appellant.*

Opinion filed January 5, 2001.

*Craig Durham* assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BEIER, P.J., PIERRON, J., and TOM MALONE, District Judge, assigned.

BEIER, J.: Defendant-appellant Vincent E. Scott challenges his robbery and obstruction of official duty convictions. He argues that he was entitled to a lesser included instruction on criminal deprivation of property, that the trial court's instruction regarding obstruction was erroneous, and that one of the prosecutor's cross-examination questions was an unconstitutional comment on his post-*Miranda* silence. We affirm.

The noteworthy events leading to Scott's convictions are these:

Victim Julie Dickinson was sitting in the driver's seat of her car, preparing to leave a convenience store parking lot, when a man later identified as Scott invited himself into the passenger side of the front seat. Scott testified at trial that he merely wanted to ask for a ride home. Dickinson, understandably, did not interpret his intentions as benign.

Dickinson began to scream as Scott grabbed her arm and attempted to prevent her from leaving the car. When Dickinson broke free and managed to jump out, Scott, in what he described as a panic brought on by Dickinson's hysterics, slid over into the driver's seat and drove away. This maneuver knocked Dickinson to the ground, because she had been holding onto the handle of the driver's door and attempting to summon help from those who remained in and around the store.

Scott was apprehended a short while later, but not before leading the police and a canine assistant on a foot chase from the place where he stopped Dickinson's car. During the chase, the police momentarily lost sight of Scott, but they followed his footprints into a vacant apartment. After the police issued several commands for Scott to surrender, the dog eventually found Scott hiding in a closet.

During cross-examination of Scott during trial, the prosecutor asked whether Scott had mentioned his version of how he ended up taking Dickinson's car to police on the night of his arrest. Before Scott answered, his counsel immediately objected and asked to approach the bench. At the ensuing bench conference, Scott's

counsel stated in part, "[W]e are treading very close to whether my client asserted any rights to remain silent." Although the prosecutor initially argued that Scott opened the door, he then proposed to withdraw the question. The judge replied, "I think it would be better," and the matter was never brought up again.

At Scott's request, the trial court instructed the jury to consider the lesser included offense of theft, but Scott did not seek a further lesser included instruction on criminal deprivation of property.

Scott also did not object to the wording of the instruction on the elements of obstruction of official duty. The instruction read in pertinent part:

"To establish [obstruction of official duty], each of the following claims must be proved:
"1. That [the police who apprehended Scott] were authorized by law to investigate reported felony crimes;
"2. That the defendant knowingly and willfully obstructed, or resisted or opposed uniformed law enforcement officers, . . . in the investigation of felony crimes which was the official duty of [the officers];
"3. That the act of the defendant substantially hindered or increased the burden of the officer(s) in the performance of the officer(s)'s official duty;
"4. That at the time the defendant knew or should have known that [the officers] were law enforcement officers."

The jury found Scott guilty of the lesser included offense of robbery and of obstruction of official duty.

### Lesser Included Instruction

Scott asserts that criminal deprivation of property occupies the lowest rung in the offense hierarchy that descends from his original charge of aggravated robbery. In his view, criminal deprivation is a lesser included offense of theft, which in turn is a lesser included offense of robbery, which in turn is a lesser included offense of aggravated robbery. He argues for the first time on appeal that the trial court's failure to give a criminal deprivation of property instruction was error and requires reversal of his robbery conviction.

The determination of whether a crime is a lesser included offense is a question of law over which an appellate court exercises unlimited review. *State v. Belcher*, 269 Kan. 2, 4, 4 P.3d 1137 (2000). Under K.S.A. 21-3107(2)(d), as it existed at the time of

Scott's alleged offense, a defendant could be convicted of a lesser included offense as an alternative to the crime charged in the complaint when the lesser offense necessarily would be proved by proving the crime charged. *State v. Williams*, 268 Kan. 1, 17, 988 P.2d 722 (1999). *Williams* recited the following two-prong test from *State v. Fike*, 243 Kan. 365, 368, 757 P.2d 724 (1988), for determining whether a lesser included crime existed under that version of K.S.A. 21-3107(2)(d):

"Under the first prong, the statutory elements of the crime charged and the alleged lesser included crime are examined. If all of the statutory elements of the alleged lesser crime will automatically be proved if the State establishes the elements of the charged crime, the alleged lesser crime is an included crime of the greater. If no included crime is found under the first prong, there may still be an included crime under the second prong of the test. Under the second prong, the charging document is examined to determine whether the evidence that must be adduced at trial to prove the crime charged would also necessarily prove another crime. If another crime is necessarily proved by proving the charged crime, the former is an included crime. [Citation omitted.]" 268 Kan. at 17.

The elements of the crime of aggravated robbery are set forth in K.S.A. 21-3427: a robbery "committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." See *State v. Holt*, 260 Kan. 33, 38, 917 P.2d 1332 (1996). "Robbery is the taking of property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 21-3426. See *Holt*, 260 Kan. at 38. Robbery is a lesser included offense of aggravated robbery. *State v. Davis*, 256 Kan. 1, 23, 883 P.2d 735 (1994).

The definition of the crime of theft is found in K.S.A. 21-3701. The subsection of this statute relevant to Scott's appeal is (a), which defines theft in substance as the obtaining or exerting unauthorized control over property with the intent to permanently deprive the owner of the possession, use, or benefit of the property. *State v. Long*, 234 Kan. 580, 588, 675 P.2d 832 (1984). Theft, under K.S.A. 21-3701(a) is a lesser included offense of robbery under K.S.A. 21-3426. *State v. Blockman*, 255 Kan. 953, 881 P.2d 561 (1994). The *Blockman* court stated its rationale as follows:

"As we concluded in *Long*, larceny is a crime against property. Robbery, however, is not only a crime against property but is also a crime against the person. The gravamen of both offenses is the unlawful taking of the property. There may be larceny without robbery, but there can be no robbery without larceny." 255 Kan. at 956.

Criminal deprivation of property under K.S.A. 21-3705(a) is obtaining or exerting unauthorized control over property, with intent to deprive the owner of its temporary use. See *State v. Keeler*, 238 Kan. 356, 364, 710 P.2d 1279 (1985). Although criminal deprivation of property and theft involve different degrees of intent to deprive, *Keeler* held that their essential elements were the same and that criminal deprivation of property was a lesser included offense of theft. 238 Kan. at 365.

We conclude that the first prong of the *Fike* test is met. Both aggravated robbery under K.S.A. 21-3427 and criminal deprivation of property under K.S.A. 21-3705(a) require a taking of property. When the first prong of the *Fike* test, the statutory elements test, is met, an analysis under the second prong is unnecessary. See *State v. Wickliffe*, 16 Kan. App. 2d 424, 426, 826 P.2d 522 (1992).

The next question is whether the evidence in Scott's case would have supported a criminal deprivation of property instruction. If not, no duty to instruct arose. See *State v. Lee*, 263 Kan. 97, 99, 948 P.2d 641 (1997). The parties debate the appropriate standard of review for this issue.

The State argues, pursuant to K.S.A. 1999 Supp. 22-3414(3), that the clearly erroneous standard applies in reviewing jury instructions given without objection. K.S.A. 1999 Supp. 22-3414(3) provides:

"No party may assign as error the giving or failure to give an instruction, *including a lesser included crime instruction*, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous." (Emphasis added.)

Scott, for his part, contends K.S.A. 1999 Supp. 22-3414(3) does not apply to his case because he went to trial almost 3 months before it was enacted. If he is right, a more lenient standard of review would govern on appeal. See *State v. Sanders*, 258 Kan.

409, 413, 904 P.2d 951 (1995) (trial court required to instruct on all lesser included crimes supported by evidence even if instructions not requested).

Generally, criminal statutes in effect at the time of a criminal offense are controlling. *State v. Sisk*, 266 Kan. 41, 44, 966 P.2d 671 (1998). " '[A] statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively.' [Citation omitted.]" *State v. Reason*, 263 Kan. 405, 416, 951 P.2d 538 (1997) (quoting *State v. Sutherland* 248 Kan. 96, Syl. ¶ 4, 804 P.2d 970 [1991]). An exception has been recognized, however, for statutory changes that are only procedural or remedial in nature. *State v. Ford*, 262 Kan. 206, 208, 936 P.2d 255 (1997).

In *State v. Brooker*, 27 Kan. App. 2d 396, 400, 4 P.3d 1180, *rev. denied* 269 Kan. 935 (2000), we determined that the 1998 amendment to K.S.A. 22-3414(3) was procedural only, affecting, as it did, the appellate standard of review. A standard of review does not define criminal conduct or assign it a punishment. It merely governs one phase of the process of responding to criminal conduct. Although Brooker was tried after the effective date of the amendment and Scott was tried before, we do not think the timing difference alters the outcome of the procedural/substantive analysis conducted in *Brooker*. Thus given Scott's failure to request an instruction on criminal deprivation of property, he must demonstrate on appeal that the trial court's failure to give such an instruction was clearly erroneous under K.S.A. 1999 Supp. 22-3414(3).

The giving or failure to give an instruction is clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the error had not occurred. *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997).

Scott cites *Wickliffe* as authority for the instruction here. In *Wickliffe*, applying the old standard of review, we held that an instruction on unlawful deprivation of property should have been given when there was little or no evidence tending to prove the temporary or permanent nature of the deprivation intended. 16 Kan. App. 2d 424, Syl. ¶ 1. In *Wickliffe*, the defendant was pursued by police for driving without headlights. When the police deter-

mined the car belonged to someone else and contacted the true owner, they learned the car had last been seen approximately 3½ hours before. This short period of time and the absence of any evidence on the circumstances surrounding the taking persuaded the panel that a jury could have concluded the defendant's intent was to deprive the owner of the car either permanently (theft) or temporarily (criminal deprivation). Because either outcome was plausible, the lesser included instruction was required. 16 Kan. App. 2d at 425-27.

We believe *Wickliffe* is both factually and legally distinguishable. On the facts of this case, there is adequate testimony regarding the circumstances surrounding the taking for a jury to draw conclusions about Scott's intent. Legally, not only must the criminal deprivation instruction be evaluated under a more harsh standard of review, but it must be compared to the charged offense of aggravated robbery rather than theft. This comparison does Scott no favors.

In this case, the trial court accepted Scott's proposed theft instruction without objection from the State, but we have concluded that the giving of even this lesser included instruction was unwarranted by the evidence. As stated above, robbery is a person and property felony, whereas theft is only a property felony. *Blockman*, 255 Kan. at 956. When a taking is accomplished by violence to a victim, more than a mere theft or criminal deprivation has occurred. The offense is at least a robbery and possibly an aggravated robbery. Compare *State v. Bateson*, 266 Kan. 238, 246, 970 P.2d 1000 (1998) (taking complete before force occurs is theft, not robbery), with *State v. Miller*, 53 Kan. 324, 325-28, 36 Pac. 751 (1894) (theft instruction inappropriate when violence used to obtain complete possession of money).

Although Scott testified that he intended only to obtain a ride home and took Dickinson's car in a panic, the evidence was clear that he obtained complete, independent, and absolute control of the car only after he forced Dickinson to let go of it by pulling out of the convenience store parking lot. Force was used to accomplish the taking, and more than a mere theft or criminal deprivation had necessarily occurred.

An instruction on a lesser included offense is not proper if, from the evidence, a jury could not reasonably convict of the lesser offense. *State v. Robinson*, 261 Kan. 865, 883, 934 P.2d 38 (1997). No reasonable jury could convict Scott of criminal deprivation of property because of the forceful nature of the crime. The trial court's failure to instruct on criminal deprivation cannot be described as erroneous at all, much less clearly erroneous under K.S.A. 1999 Supp. 22-3414(3).

### Instruction on Obstruction of Official Duty

Scott also takes issue for the first time on appeal with the wording of the trial court's instruction on obstruction of official duty. Again, because of the absence of an objection before the trial court, Scott must demonstrate the instruction was clearly erroneous to obtain a reversal. K.S.A. 1999 Supp. 22-3414(3).

Scott first argues the instruction should have directed the jury to consider the police officers' subjective knowledge and intent regarding whether they were investigating a felony or misdemeanor. Scott cites *State v. Hudson*, 261 Kan. 535, 538-39, 931 P.2d 679 (1997), which held a misdemeanor or felony charge for obstruction of official duty under K.S.A. 21-3808 depends on the officer's belief when he or she is carrying out an official duty.

In *Hudson*, the Kansas Supreme Court determined a felony conviction for obstruction of official duty could not be upheld when the officer believed at the time he was pursuing a suspect who had committed a misdemeanor. The charge was reduced to a misdemeanor count of obstruction because the officer's knowledge and intent at the time he approached the defendant dictated the severity of the crime. 261 Kan. at 538-39.

We do not read *Hudson* to require the jury's consideration of an additional element in this case. The misdemeanor or felony nature of the crime was not contested. Both of the officers who testified said they were investigating a car theft whose particulars were broadcast over the police radio, when they attempted to apprehend Scott. We see no possibility the jury would have returned a different verdict if the instruction on obstruction of official duty were altered in the way Scott now suggests.

Scott next argues this instruction was clearly erroneous because it failed to specify which felony the officers were investigating.

The trial court used the obstruction of official duty instruction found in PIK Crim. 3d 60.09. Use of PIK Crim. 3d 60.09 is favored when the State charges obstruction of an officer in the discharge of his duty. *State v. Timley*, 25 Kan. App. 2d 779, 785-86, 975 P.2d 264 (1998), *rev. denied* 266 Kan. 1115 (1999). The use of PIK instructions is strongly recommended and should be followed absent a need for modification. *State v. Dias*, 263 Kan. 331, 335, 949 P.2d 1093 (1997). The elements of the underlying felony are not mentioned in PIK Crim 3d. 60.09 or its accompanying notes on use.

Moreover, Scott admitted in his own testimony to taking Dickinson's car, running from the police, and hiding in the closet of the vacant apartment. An instruction on the elements of the underlying felony is unwarranted when all of the instructions coupled with the evidence at trial clearly specify the crime charged. See *State v. Noriega*, 261 Kan. 440, 451, 932 P.2d 940 (1997). Here, the obstruction of official duty instruction was not clearly erroneous due to lack of specificity on the underlying crime.

### Post-Miranda Silence

It is unconstitutional for the State to elicit evidence at trial of a defendant's post-*Miranda* silence. *Doyle v. Ohio*, 426 U.S. 610, 618, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976) In *State v. Edwards*, 264 Kan. 177, 195, 955 P.2d 1276 (1998), the Kansas Supreme Court stated:

"A *Doyle* violation occurs when the State attempts to impeach a defendant's credibility at trial by arguing or by introducing evidence that the defendant did not avail himself or herself of the first opportunity to clear his or her name when confronted by police officers but instead invoked his or her constitutional right to remain silent."

The State's sole argument on this point is that Scott did not properly preserve this issue for appeal. A question or comment challenged under *Doyle* requires a timely and specific objection to preserve the issue for appeal. *State v. Haddock*, 257 Kan. 964, 973, 897 P.2d 152 (1995). We consider Scott's counsel's immediate ob-

jection and statement that the prosecutor was "treading very close to whether [Scott] asserted any rights to remain silent" sufficient to preserve the *Doyle* issue for appeal.

The principles of *Doyle* were first adopted by the Kansas Supreme Court in *State v. Mims*, 220 Kan. 726, 730, 556 P.2d 387 (1976). Its prohibition on using post-*Miranda* silence to impeach a defendant is rooted in the *Miranda* warnings' implicit promise that silence during custodial interrogation will carry no penalty. *State v. Miller*, 259 Kan. 478, 482-83, 912 P.2d 722 (1996).

The prosecutor's question of Scott is of the same type as that found improper in *State v. Heath*, 222 Kan. 50, 53, 563 P.2d 418 (1977). In *Heath*, the prosecutor asked the defendant his purpose for waiting until trial to divulge his alibi. Like the prosecutor in *Heath*, the prosecutor in this case stepped over the line.

We must therefore consider whether the prosecutor's misconduct was so prejudicial as to require a new trial. *Edwards*, 264 Kan. at 196. The appropriate standard of review for this issue is stated in *State. v. Gadelkarim*, 256 Kan. 671, 887 P.2d 88 (1994):

"Claims that there has been an impermissible comment or question about a defendant's post-*Miranda* silence are measured by the harmless error standard. Only error which fails to meet the federal standard of harmless error, defined as belief beyond a reasonable doubt that the error did not contribute to the verdict, requires reversal. To facilitate the determination of whether a prosecutor's comments are harmless error, Kansas appellate courts consider the nature and extent of the comment in comparison with the strength of the evidence of the defendant's guilt, and further consider whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be, a comment on the failure of the defendant to testify." 256 Kan. at 685.

At Scott's trial, an abundance of testimony supported the guilty verdicts. His convictions rested heavily on his own testimony. He admitted to taking Dickinson's car, running from the police, and resisting arrest. In addition, the victim testified that he first tried to keep her in the car and then drove off as she held the driver's door handle from the outside, knocking her off balance.

In contrast, the prosecutor's remark was brief and superficial. It was immediately objected to, and the subject was dropped. When comments that violate a defendant's rights as enunciated in *Doyle*

are as brief as they were here and a defense objection prevents any follow-up, their prejudicial effect is minimal, if any. *Edwards*, 264 Kan. at 196. We hold the error harmless when weighed against the evidence of guilt.

Affirmed.