(22 P.3d 1069)

No. 84,269

STATE OF KANSAS, *Appellee,* v. HOWARD L. BANKS, JR., *Appellant.*

Opinion filed April 13, 2001.

*Libby Snider*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Keith E. Schroeder, Stacy Lynn Cunning*, assistant district attorneys, *Timothy J. Chambers*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GREEN, P.J., BEIER, J., and DAVID PRAGER, Chief Justice Retired, assigned.

PRAGER, C.J.: This is an appeal by the defendant, Howard J. Banks, Jr., from convictions of two counts of aggravated indecent liberties with a child. Banks' principal argument is that the trial court improperly failed to give a multiple acts jury instruction. We

disagree. In addition, we determine that Banks' other contentions of error are fatally flawed. Accordingly, we affirm.

The evidence in the case is not greatly in dispute. In June 1998, T.N. and L.H., 11-year-old females, were walking to L.H.'s house when it started to rain. They entered a laundromat to escape the rain and noticed a dog outside. When it stopped raining, the girls went outside and saw Banks.

They asked Banks if the dog was his. He replied it was not but that he would take care of it. The girls saw that Banks had a gun in a pouch by his side, but Banks did not tell them he had it or show it to them. The gun, however, did scare T.N.

While outside the laundromat, Banks pulled T.N. down to the ground, had hold of her arm, and began touching her pelvic area on the outside of her clothing. He failed in his efforts to get inside her clothes. During part of this encounter, L.H. went back inside the laundromat, but she was present at least part of the time Banks was touching T.N. According to T.N., Banks also touched L.H.'s breasts.

When T.N. pulled her arm away, she got up, and she and L.H. picked up the dog and left the laundromat to go to L.H.'s house. Banks followed them. At some point while they were walking, L.H. handed the dog over to Banks. They neared Banks' house, and he called the girls over to see where he was going to keep the dog. When the girls went over to him, Banks touched L.H.'s breasts. According to T.N., Banks also touched T.N.'s pelvic area. L.H. elbowed Banks, and the girls ran to L.H.'s house.

Initially, the girls did not tell anyone what had happened, but they eventually told T.N.'s mother, who notified the police. Banks was charged with two counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A). Count I pertained to T.N.; count II pertained to L.H.

At trial, both T.N. and L.H. identified Banks as the person who had touched them that day. T.N. testified she was very scared when Banks was touching her. L.H. testified she felt very uncomfortable when Banks touched her.

The prosecution called as witnesses two licensed clinical social workers, Pat Peters and John Theis, who testified regarding their

evaluations of T.N. and L.H. Peters, who conducted a sexual abuse evaluation on T.N., testified that she diagnosed T.N. with "adjustment disorder unspecified," with a recent cause of stress being T.N.'s "[r]ecent report of sexual abuse." Similarly, Theis had conducted a sexual abuse evaluation on L.H. and diagnosed her as having an "adjustment disorder with anxiety," which is typically a reaction to a stressful event.

The defense rested its case without calling any witnesses. The judge denied Banks' request for a jury instruction on the lesser included offense of battery, and Banks objected to the verdict form only on that basis.

The jury returned a guilty verdict on both counts. On November 5, 1999, the trial court imposed consecutive sentences of 55 months' imprisonment for count I and 49 months' imprisonment for count II. Banks filed a timely appeal.

On appeal, Banks first contends that the trial court erred in failing to give an instruction requiring the jury to be unanimous about which act it relied on in reaching a verdict because this was a multiple acts case. Banks argues this is a multiple acts case because there was evidence of multiple acts of touching as to each girl at the laundromat and en route to L.H.'s house. In *State v. Timley*, 255 Kan. 286, 289-290, 875 P.2d 242 (1994), the court stated:

" 'In multiple acts cases, . . . several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.' [Citation omitted.]"

In this case, Banks did not object at trial to the court's omission of a multiple acts instruction. Generally, a party may not claim error in the failure to give an instruction without first objecting thereto, unless such failure is clearly erroneous. K.S.A. 1999 Supp. 22-3414(3). "Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not

occurred." *State v. Henry,* 263 Kan. 118, 131, 947 P.2d 1020 (1997).

The State presented evidence, predominantly through the testimony of T.N., that Banks touched both girls outside the laundromat and both girls near his house. L.H. gave overlapping testimony that Banks only touched T.N. outside the laundromat and only touched L.H. near his house. Banks contends that these multiple acts of touching call into question whether the jury unanimously agreed on which act constituted the crime of aggravated indecent liberties with a child under each count.

In *State v. Staggs,* 27 Kan. App. 2d 865, Syl. ¶ 2, 9 P.3d 601 (2000), this court stated: "When the factual circumstances of a crime involve a short, continuous, single incident comprised of several acts individually sufficient for conviction, jury unanimity requires only that the jury agree to an act of the crime charged, not which particular act." As a result, we must determine whether the evidence showed factually separate incidents or whether the evidence showed a short, continuous, single incident comprised of several acts individually sufficient for conviction.

Although the time frame in the present case appears to have been a little longer than in *Staggs,* this court believes that the acts outside the laundromat and near Banks' house were not factually separate. L.H.'s house was about 2 blocks away from the laundromat and Banks' house was located somewhere in between. Given that the second encounter took place as they walked from the laundromat toward L.H.'s house, it does not seem that much time had elapsed between the first and second touchings. Because the touching outside the laundromat and the touching near Banks' house occurred in relative proximity to one another, the acts were not separate incidents. Rather, they were a continuing course of conduct—a single unbroken chain of events.

In further support of this continuing course of conduct determination, we note that Banks used the girls' attraction to the dog outside the laundromat and his promise to look after the dog to entice the girls. Banks' use of the dog started outside the laundromat and continued until the girls stopped to say goodbye to the

dog near Banks' home. Banks' use of the dog in this manner showed a single, continuous incident over a short period of time.

Finally, although we are aware of several cases holding to the contrary, we believe these cases are distinguishable from the present case. For example, in three cases the factual circumstances of the crime do not involve a single, continuous incident over a short period of time. See *State v. Wellborn,* 27 Kan. App. 2d 393, 394, 4 P.3d 1178, *rev. denied* 269 Kan. 940 (2000) (the crimes were alleged to have occurred between May and July 1995; January and June 1996; and April 1997); *Crutcher v. State,* 27 Kan. App. 2d 674, 675-76, 8 P.3d 1, *rev. denied* 268 Kan. 885 (1999) (the crimes were alleged to have occurred between January 1, 1992, and November 1, 1992); *State v. Barber,* 26 Kan. App. 2d 330, 331, 988 P.2d 250 (1999) (the defendant possessed a gun during a disturbance, left the area, threw the gun away, got another gun, and later returned).

Furthermore, in *State v. Kinmon,* 26 Kan. App. 2d 677, 678-79, 995 P.2d 876 (1999), the defendant was convicted of possession of cocaine and possession of drug paraphernalia. This court reasoned that the drug paraphernalia charge could relate to the cocaine found in either a cigarette case or a key holder. As a result, the jury could have convicted defendant for possession of either item. This court determined that the trial court erred in failing to give a multiple acts instruction. The *Kinmon* case is distinguishable from the current case because the alleged possession of the cigarette case and the key holder involved factually separate incidents.

The key holder was discovered under a couch in the house. The defendant presented evidence that the key holder belonged to another defendant. In addition, Kinmon testified that the cigarette case belonged to a woman who was in the residence. He testified that he took the cigarette case out of the woman's coat pocket to get a cigarette just before the police arrived. Clearly, in voting to convict Kinmon, the jurors could have relied on different acts.

In addition, *Kinmon* is distinct from the present case because Kinmon presented legally separate defenses concerning the key holder and the cigarette case. As stated earlier, Kinmon maintained the key holder belonged to another defendant. As to the cigarette

case, Kinmon contended that he was an innocent possessor of the case. On the other hand, in the present case, Banks simply maintained that he did not molest either girl. As a result, Banks did not present legally separate defenses.

Unlike *Kinmon,* the testimony of both T.N. and L.H. was consistent about Banks' touching T.N. outside the laundromat and touching L.H. near Banks' house. The main inconsistency between T.N.'s and L.H.'s testimony involved the number of times each girl alleged she was molested.

T.N. testified that they were each molested twice, and L.H. testified that they were each molested once. This inconsistency is not important because of the factual circumstances surrounding Banks' crimes. Because Banks was involved in a short, continuous, single incident comprising one or more acts of molestation against each girl, jury unanimity requires only that the jury agree to an act of the crime charged, not which particular act. Here, the compatible evidence showed that each girl had been molested at least once. As a result, because the evidence showed that no real possibility existed for juror confusion, Banks was not deprived of a unanimous verdict.

Banks' second argument on appeal is that the trial court erred in admitting the testimony of Pat Peters and John Theis concerning their diagnoses of the two girls. Banks claims the social workers were unqualified to diagnose the girls and that their testimony only served to pass upon the credibility of the witnesses. Defendant did not object to this testimony at trial.

As the State correctly notes, Banks' failure to object at trial precludes this court's consideration of the issue. *State v. Cheeks,* 258 Kan. 581, 593, 908 P.2d 175 (1995). However, it should be noted that both Peters and Theis are licensed clinical social workers with master's degrees in social work. They regularly conduct sexual abuse evaluations. They were clearly qualified as expert witnesses in this case. Peters' and Theis' evaluations and the findings resulting from those evaluations were relevant evidence because the victims' behavior following the reported assaults is relevant corroborating evidence of the assaults. *State v. Reser,* 244 Kan. 306, 310,

767 P.2d 1277 (1989). The trial court did not abuse its discretion in admitting their testimony.

Banks' third contention is that the trial court erred in admitting testimony of prior consistent statements made by T.N. and L.H. Banks did not object to this testimony at trial. Banks wrongly states that this testimony was the only evidence offered by the State and that Banks was convicted on the basis of prior statements of the victims to family members, police, and social workers. This contention ignores the important fact that both victims testified at length about what happened. This testimony was admissible under K.S.A. 1999 Supp. 60-460(a).

Banks' fourth point is that the trial court erred in failing to instruct the jury on the lesser included offenses of battery and attempted aggravated indecent liberties with a child. At the trial, defendant requested, but was denied, a jury instruction on the lesser offense of battery. Whether a crime is a lesser included offense is a question of law giving this court unlimited review. *State v. Scott,* 28 Kan. App. 2d 418, 17 P.3d 966 (2001). In *Scott,* the court held that the giving or failure to give an instruction is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the error had not occurred and that an instruction on a lesser included offense is not proper if a jury could not reasonably have convicted of the lesser offense on the evidence presented.

Battery is defined in K.S.A. 21-3412(a) as "[i]ntentionally or recklessly causing bodily harm to another person" or (b) "intentionally causing physical contact with another person when done in a rude, insulting or angry manner." In its instructions, the trial court gave the following definition of lewd fondling or touching as provided in PIK Crim. 3d 53.00:

"*[L]ewd fondling or touching* may be defined as a fondling or touching in a manner which tends to undermine the morals of the child, which is so clearly offensive as to outrage the moral senses of a reasonable person, and which is done with the specific intent to arouse or satisfy the sexual desires of either the child or the offender or both."

Clearly, the word "lewd" is not equivalent to "rude or insulting" as Banks contends. The evidence required to prove aggravated in-

decent liberties with a child would not prove this form of battery. Hence, battery is not a lesser included offense, and the court did not err in failing to give such an instruction.

As to the failure of the court to instruct on the offense of attempted aggravated indecent liberties with a child, it is important to note that Banks did not request such an instruction. The law is clear that in the absence of an objection, a party cannot complain of the failure to give an instruction unless that failure is clearly erroneous. Both of the girls testified that Banks actually did touch them in a lewd manner. Banks did not claim he only attempted to touch the girls in a lewd manner. We hold that the trial court did not commit error on this issue because the evidence did not support a mere attempt.

Banks' last claim of error is that the State committed prosecutorial misconduct in its closing argument rendering this trial fundamentally unfair. Banks admits that he failed to object to statements made by the prosecutor in closing argument. We have considered the record and find there were no prosecutorial statements so gross and flagrant as to prejudice the jury against the defendant; even if there were, the evidence against the defendant was so overwhelming the prosecutor's remarks would not have changed the result of the trial. When viewed in their entirety, the prosecutor's statements made during the trial and during closing argument did not prejudice Banks and were at the most harmless error.

The judgment of the trial court is affirmed.

BEIER, J., dissenting: I respectfully dissent from that portion of the majority's opinion dealing with the absence of a unanimity instruction in this case.

In my view, the facts of this case—particularly the multiple victims' conflicting testimony about who was touched where and how many times and the undisputed distinctions of time and space between the first incident outside the laundromat and the second incident at or near the defendant's home—make this case analytically identical to those that have found multiple acts, and their companion potential for jury confusion and lack of unanimity. See

*State v.Wellborn*, 27 Kan. App. 2d 393, 394, 4 P.3d 1178, *rev. denied* 269 Kan. 940 (2000); *Crutcher v. State*, 27 Kan. App. 2d 674, 675-76, 8 P.3d 1, *rev. denied* 268 Kan. 885 (1999); *State v. Kinmon*, 26 Kan. App. 2d 677, 678-79, 995 P.2d 876 (1999); *State v. Barber*, 26 Kan. App. 2d 330, 331, 988 P.2d 250 (1999).

The *Staggs* decision upon which the majority relies, *State v. Staggs*, 27 Kan. App. 2d 865, 9 P.3d 601, *rev. denied* 270 Kan. 903 (2000), is readily distinguishable on the facts and on the law.

*Staggs* dealt with one act only: a fight, which happened to include both a punch and a kick. As now Chief Judge Rulon observed for the unanimous panel in that opinion, the punch and the kick within seconds of each other in the same fight between the same individuals could not have been charged separately without being vulnerable to an attack for multiplicity. *Staggs*, 27 Kan. App. 2d at 867. In other words, the punch and the kick were not multiple acts at all.

In contrast, here we have a situation where at least two physical acts are far more factually separate and far less uniformly described. Depending on which victim's testimony is believed, there were either two touchings per girl in two different places separated by at least several minutes or one touching per girl, one in one place at one time and one in another place at least several minutes later. As Judge Elliott pointed out in *Crutcher*, 27 Kan. App. 2d at 676, until the legislature sees fit to convert sex crimes perpetrated on children into continuing course of conduct crimes, each touching could have supported a separate count. Compare *State v. Long*, 26 Kan. App. 2d 644, 650, 993 P. 2d 1237 (1999), *rev. denied* 268 Kan. 892 (2000) (multiple penetrations in various rooms over course of 1 to 2 hours can be charged as separate rapes; no multiplicity).

This case, again depending on which girl's version is believed, could have been charged in two counts or four counts. With no further guidance than they were given here, the members of the jury were free to cobble together their ultimate result from varying versions of the evidence. Confusion and lack of unanimity were genuine and practical hazards, not merely remote or purely academic risks.

*Barber* and its progeny have it right: In order to convict when there is evidence of two or more incidents that could form the basis of a conviction, either the State must tell the jury which incident it is relying upon or the jury must receive a unanimity instruction. See *Barber*, 26 Kan. App. 2d at 331; P.I.K Crim. 3d 68.09-B ("In order for the defendant to be found guilty of [crime], you must unanimously agree upon the same underlaying act."); P.I.K Crim. 3d 68.09-B at Notes on Use ("This instruction is for use when distinct incidents separated by time or space are alleged by the State in a single count of the charging document. In other words, under circumstances where the State could have proceeded under multiple counts but chose not to do so.")

Because this is a multiple acts case in which there was neither an election or its functional equivalent, see *State v. Fulton*, ___ Kan. App. 2d ___, ___, ___ P.3d ___ (No. 84,044 filed April 13, 2001), nor a unanimity instruction, I would reverse Banks' conviction. As we said in *Barber*, it is impossible for us to conduct an objective analysis as to which act the jury relied upon to convict or for us to be confident the verdict was unanimous. 26 Kan. App. 2d at 331. In such a situation, a defendant's failure to request a unanimity instruction is irrelevant. There is structural error. For this reason, I dissent.