No. 84,269

STATE OF KANSAS, *Appellee*, v. HOWARD L. BANKS, JR., *Appellant*.

(46 P.3d 546)

Opinion filed May 31, 2002.

*Libby K. Snider*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Keith E. Schroeder*, district attorney, argued the cause, and *Stacy Lynn Cunning*, assistant district attorney, *Timothy J. Chambers*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Howard Banks petitions this court for review of the Court of Appeals' decision affirming his jury convictions of two counts of aggravated indecent liberties with a child. Banks argues: (1) The trial court erred in failing to instruct the jury it must unanimously agree which act or acts it believed Banks committed, (2) the trial court erred in admitting the victim's hearsay statement, (3) the trial court erred in instructing the jury on the lesser included offenses of battery and attempted aggravated indecent liberties with a child, and (4) the prosecutor committed prosecutorial misconduct. We affirm.

The State charged Banks with two counts of aggravated indecent liberties with a child after two girls reported Banks touched them on June 22, 1998. The case proceeded to trial, wherein the jury reached a unanimous guilty verdict on both counts. The Court of Appeals, with one panel member dissenting, affirmed Banks' conviction. *State v. Banks*, 28 Kan. App. 2d 829, 22 P.3d 1069 (2001). This court granted Banks' petition for review.

The State's theory at trial was that Banks touched one of the victims in front of a laundry and the other victim in front of Banks' house. The State's case relied on the victims' trial testimony and the victims' prior accounts of the incident. Banks denied any involvement and argued the victims' stories were too unreasonable to believe.

Facts

T.N. testified at trial that she and L.H. were walking to L.H.'s house. The girls stopped at a laundry to get out of the rain. While at the laundry, the girls spotted a dog outside. T.N. and L.H. called the dog in to protect it from the rain. Once the rain ceased, the girls went outside the laundry and encountered a man identified later as Banks. The girls asked Banks if the dog was his. Banks denied ownership of the dog but said he would take care of it.

T.N.'s Testimony Regarding Laundry Incident

T.N. testified that while she was outside the laundry Banks pulled her down and touched her crotch area on the outside of her

clothes. T.N. testified that Banks also touched L.H. there in front of the laundry:

"Q. Right when you were outside of the laundromat, is that when he touched you, or when he touched [L.H.]?
"A. That's when he touched [L.H.] and me."

Later, T.N. said, in reference to the incident in front of the laundry, "He started touching [L.H.] and she got away, and she called me, but he wouldn't let me up."

### T.N.'s Testimony Regarding Incident Near Banks' House

After T.N. and L.H. had freed themselves from Banks, they started running, but Banks followed. T.N. said Banks called them both over to his house, where Banks again touched both of them. T.N. testified:

"Q. What happened next?
"A. We started walking and he followed us, and we gave him the dog, and he, we started walking to her house again, and he called us over there, and we really didn't want to go, but [L.H.] insisted that we find out where he was keeping the dog so she called us [sic], she pulled me over there with her so she wouldn't be alone, and then he started touching her and me again, and then we got away because she elbowed him in the side, and we started running.
"Q. How was he touching the both of you at that point?
"A. He was still touching her up on the top of her chest and the breasts, and me down in the vagina."

On cross-examination, T.N. confirmed that Banks had touched both girls at the laundry and at Banks' house. Thus, T.N.'s testimony established two incidents of touching near Banks' house and two incidents of touching at the laundry.

### L.H.'s Testimony Regarding Laundry Incident

L.H.'s testimony only described two touching incidents; one at the laundry and one near Banks' house. L.H. confirmed the girls were walking to L.H.'s house. L.H.'s testimony generally confirmed T.N.'s story about entering the laundry to seek shelter from the rain. When the girls encountered Banks outside, they asked him if the dog belonged to him. Banks said he would take care of the dog. L.H. testified she went back into the laundry, leaving T.N. and Banks outside to talk. L.H. testified Banks touched T.N.,

"[a]nd we were getting ready to go, and he pulled her down to the ground and I said, [T.N.] let's go, and then he tried touching her in the private part, and then we started walking, and we were walking . . . ."

## L.H.'s Testimony Regarding Incident Near Banks' House

After getting away from Banks at the laundry, the girls walked by Banks' house, where he tried to grab L.H., touching her on her breasts. L.H. testified: "Well, [T.N.] was ahead of me and I was walking behind her, and he grabbed me and he tried touching my private area up above, and I took my arm and I hit him in the chest as hard as I could." On cross-examination, L.H. confirmed that Banks did not touch T.N. at Banks' house, in contradiction to T.N.'s testimony. While not explicitly saying so, L.H. strongly implied further on cross-examination that Banks did not touch her at the laundry.

## Other Testimony

T.N.'s mother also testified. Both T.N. and L.H. told T.N.'s mother about the incident. According to T.N.'s mother, both girls reported that Banks had touched T.N. at the laundry and L.H. at Banks' house.

Jeremy Couch, a deputy with the sheriff's department, testified he took L.H.'s statement. According to Deputy Couch, L.H. said Banks "took the dog and shoved it in the crotch area of the girls and, and also stuck his hands down in the crotch area of [T.N.]." Deputy Couch's testimony began to describe the girls' collective story. He said the girls reported that Banks "smelled his fingers and also had licked his fingers after doing them, touching them there." Deputy Couch then confirmed that Banks had touched L.H. near Banks' house.

Judy Trujillo, a detective with the sheriff's department, testified she met with and took the statements of both girls. According to Detective Trujillo, T.N. reported Banks "put the dog, the nose of the dog between her legs." T.N. also told Detective Trujillo that Banks rubbed the outside of her clothing between her legs. T.N. said Banks then smelled and licked his fingers. L.H. reported to

the detective that Banks touched "the outside of her legs on the thigh area," but did not "reach between her legs." L.H. told Detective Trujillo that Banks "put his arm around her and had touched her on the outside of her clothing on her breasts."

The State also presented the testimony of Pat Peters and John Theis, both social workers. Both Peters and Theis performed sexual abuse evaluations. Peters, who evaluated T.N., testified about T.N.'s statements describing the incident, which supported the State's theory that Banks had touched T.N. at the laundry and L.H. in front of Banks' house. Theis, who interviewed L.H., testified regarding L.H.'s description of the incident, which also generally supported the theory that Banks had touched T.N. at the laundry and L.H. at his house. However, Theis' testimony at one point also suggested that Banks had attempted to touch L.H. at the laundry.

Banks did not present any testimony in his defense, relying instead on his statements of denial made to Detective Trujillo.

## Court of Appeals' Decision

The majority opinion of the Court of Appeals panel which reviewed this case concluded that the testimony of the victims did not establish separate acts because the "touching outside the laundromat and the touching near Banks' house occurred in a relative proximity to one another" and involved "a continuing course of conduct—a single unbroken chain of events." 28 Kan. App. 2d at 832. Based upon this conclusion, the majority held that Banks was not deprived of a unanimous verdict in that "the compatible evidence showed that each girl had been molested at least once" and further demonstrated that no real possibility of juror confusion existed. 28 Kan. App. 2d at 834.

The dissent, relying on the time difference between the touching incidents and the distance separating those incidents, concluded that the evidence based on the testimony of T.N. and L.H. could have resulted in two or four separate counts. "With no further guidance than they were given here, the members of the jury were free to cobble together their ultimate result from varying versions of the evidence. Confusion and lack of unanimity were genuine and practical hazards, not merely remote or purely academic risks."

28 Kan. App. 2d at 837. The dissent, therefore, concluded that the error was structural requiring reversal of Banks' convictions. 28 Kan. App. 2d at 838.

Shortly after the Court of Appeals' opinion in this case, this court filed its decision in *State v. Hill*, 271 Kan. 929, Syl. ¶ 3(b), 26 P.3d 1267 (2001). *Hill* rejected the structural error approach, which according to several Court of Appeals decisions required reversal once it was determined that there were multiple acts and the trial court had failed to give a unanimity instruction whether or not requested. See *Crutcher v. State*, 27 Kan. App. 2d 674, 675-76, 8 P. 3d 1, *rev. denied* 268 Kan. 885 (1999); *State v Wellborn*, 27 Kan. App. 2d 393, 394, 4 P.3d 1178, *rev. denied* 269 Kan. 940 (2000); *State v. Kinmon*, 26 Kan. App. 2d 677, 678-79, 995 P. 2d 876 (1999); *State v. Barber*, 26 Kan. App. 2d 330, 331, 988 P. 2d 250 (1999).

Instead of the structural error approach, *Hill* provides for a "two-step harmless error analysis to . . . [the] contention that a unanimity instruction should have been given." 271 Kan. at 939. Further, we stated:

"In applying a harmless error analysis, the first step is to determine whether there is a possibility of jury confusion from the record or if the evidence showed either legally or factually separate incidents. Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motived by 'a fresh impulse.' When jury confusion is not shown under the first step, the second step is to determine if the error in failing to give an unanimity instruction was harmless beyond a reasonable doubt with respect to all acts." *Hill*, 271 Kan. at 939.

Banks, like Hill, failed to request a unanimity instruction. Banks argued before the Court of Appeals and now before this court that the trial court erred in failing to instruct the jury to unanimously agree on the act supporting its verdict. We note that

"[n]o party may assign as error the giving or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection

unless the instruction or the failure to give the instruction is clearly erroneous."
K.S.A. 2001 Supp. 22-3414(3).

Banks did not request a unanimity instruction and did not object to the lack of such an instruction. "Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997). As indicated in *Hill*, the appropriate analysis is one of harmless error.

There is a striking similarity between the facts of the case we now consider and *Hill*. Hill was convicted of rape, aggravated indecent liberties with a child, and aggravated indecent solicitation of a child. Evidence at trial indicated that Hill penetrated the victim in the bathroom, followed by penetration of the victim in the kitchen just off the bathroom. However, until the day before trial, the State was unaware that an alleged penetration had occurred in the kitchen and Hill was only charged with one count of rape. This court noted that "materially identical evidence was presented with respect to both acts of rape. Hill did not present a separate defense or offer materially distinct evidence of impeachment regarding any particular act. The defense presented a general denial of participation in any wrongful conduct." 271 Kan. at 940.

In adopting the harmless error approach, this court relied in part on a quote from the Chief Judge of the Washington Court of Appeals analyzing cases of multiple acts where the defense is one of general denial:

" 'In those cases in which the defense to charges based on multiple acts is a general denial, differentiation among a number of events is not required of the jury and therefore is not an issue in controversy. The jury either accepts the victim's testimony as to all and convicts, or it accepts the defendant's denial and acquits on all charges. The failure to give a unanimity instruction in those instances is harmless error; it does not relate to an issue in controversy.' Sweeney, *An Analysis of Harmless Error in Washington: A Principled Process*, 31 Gonz. L. Rev. 277, p. 302 (1996)." *Hill*, 271 Kan. at 938-39.

*Hill* affirmed the defendant's conviction of rape based upon the conclusion that there was no confusion on the part of the jury:

"We agree with the Court of Appeals' conclusion that jury confusion was not shown here. In applying a harmless error review, since there was no extrinsic evidence to support the charges, the sole issue was the credibility of the victim's account of the two alleged penetrations. The evidence offered no possibility of jury disagreement regarding Hill's commission of either of these acts. By the jury's rejection of Hill's general denial, we can unequivocally say there was no rational basis by which the jury could have found that Hill committed one rape but did not commit the other." 271 Kan. at 940.

## Discussion

The facts in the present case are more distinct in time and space than the facts in *Hill*, yet the *Hill* court concluded the incidents were factually separate. In *Hill*, the first incident occurred in the bathroom and the second occurred in the kitchen in the same house. In the present case, the first incidents occurred at the laundry and the second incidents occurred near Banks' house, a greater distinction in both time and space. Under the test set forth in *Hill*, we conclude that the majority opinion of the Court of Appeals that the acts of touching were not separate incidents but a continuing course of conduct was in error. This case is a multiple acts case and the harmless error analysis set forth in *Hill* applies.

The first step in the *Hill* analysis is to determine whether the jury could have been confused as to which acts the State alleged occurred. As the *Hill* court points out, confusion stems from legally or factually separate incidents. We have determined that the incidents in this case are factually separate incidents. Such a determination does not necessarily cause confusion nor does it preclude application of a harmless error analysis. However, under the test set forth in *Hill*, the incidents in this case are not legally separate. *Hill* states:

"Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents." 271 Kan. at 939.

Banks did not present different defenses to separate sets of facts but relied on the testimony of Detective Trujillo, who described her interview with Banks as follows:

"Q. Did he talk about having contact with the girls any other place?

"A. He knew [T.N.] and family and had seen them in town, but I don't recall any other specific contact.

"Q. Okay. And Mr. Banks denied having touched the girls in any inappropriate way?

"A. That is correct.

"Q. Did Mr. Banks have any idea why [T.N.] or [L.H.] would say these things if nothing happened?

"A. He really didn't have any idea of why they would make any kind of a report against him.

"Q. Okay. And was that pretty much the extent of your interview with Mr. Banks?

"A. Yes."

Banks' attorney made it clear in his closing arguments that Banks' version of the events was supplied by Detective Trujillo. Moreover, the jury instructions were not ambiguous and there was no tendency to shift the legal theory from a single incident to two separate incidents.

Thus, based on the same legal defense to the crimes, there is no reason for this court to believe the jury would have believed some of the incidents but not the others. Banks' response to Detective Trujillo that he had no idea why T.N. or L.H. would say those things if nothing had happened suggests that the issue for resolution by the jury was one of whom they believed, T.N. and L.H. or Banks. Just as in *Hill*, there was no extrinsic evidence to support the charges. The jury rejected Banks' general denial and unequivocally demonstrated it believed in the credibility of the victims with its verdict. We do not believe that the difference in testimony of the victims concerning the number of times they were touched at each location is determinative. The question for the jury based upon the general denial of Banks was one of credibility and jury confusion. Here, there was no confusion. The jury either believed the victims or the defendant.

While there was evidence of factually separate acts, Banks presented a unified defense to all acts. Because there was no extrinsic evidence other than the credibility of the victims, we can unequivocally determine that the jury would not have disagreed as to the commission of any of these acts. Thus, the Court of Appeals may be affirmed on this point, for the reasons given are immaterial if the ruling is correct for any reason. *State v. Jones*, 267 Kan. 627,

634, 984 P. 2d 132 (1999). We conclude that the failure to give a unanimity instruction under the facts of this case was harmless error.

In conclusion, it is important that we repeat the caveat expressed by the Court of Appeals and adopted in our *Hill* decision:

" 'This holding should not be interpreted to give prosecutors carte blanche to rely on harmless error review, and it is strongly encouraged that prosecutors elect a specific act or the trial court issue a specific unanimity instruction. In many cases involving several acts, the requirement that an appellate court conclude beyond a reasonable doubt as to all acts will not be found harmless.

" 'It should be acknowledged that a prior Kansas Supreme Court case leaves open the possible interpretation that in multiple acts cases a general unanimity instruction followed by polling the jury is an effective cure to the lack of a specific unanimity instruction. See *State v. Smith*, 268 Kan. 222, 230, 993 P.2d 1213 (1999). Polling the jury is insufficient to cure a multiple acts problem unless the jurors are polled specifically to their agreement on the same incident.' " *Hill*, 271 Kan. at 940 (quoting *State v. Hill*, 28 Kan. App. 2d 28, 36, 11 P.3d 506 [2000]).

## Hearsay Evidence

Banks argues the trial court erred in admitting in evidence the victims' hearsay statements. Banks admits he failed to object to the hearsay statements at trial. Therefore, this issue is not properly before this court, and the error, if indeed there was one, should be deemed waived. See *State v. Carr*, 265 Kan. 608, 619-20, 963 P.2d 421 (1998). The Court of Appeals reached the same conclusion in this case but further noted that the hearsay statements were admissible as a previous statement of a person present. *Banks*, 28 Kan. App. 2d at 835. See K.S.A. 2001 Supp. 60-460(a).

## Lesser Included Offenses

Banks argues the trial court erred in failing to instruct the jury on the lesser included offense of battery and attempted aggravated indecent liberties with a child. Banks requested an instruction on the lesser included offense of battery, but the trial court refused to so instruct. Whether a crime is a lesser included offense is a question of law over which an appellate court exercises unlimited review. *State v. Belcher*, 269 Kan. 2, 4, 4 P.3d 1137 (2000).

## Battery

The Court of Appeals rejected Banks' argument, concluding that battery was not a lesser included offense. We agree and adopt the analysis of the Court of Appeals:

"Battery is defined in K.S.A. 21-3412(a) as '[i]ntentionally or recklessly causing bodily harm to another person' or (b) 'intentionally causing physical contact with another person when done in a rude, insulting or angry manner.' In its instructions, the trial court gave the following definition of lewd fondling or touching as provided in PIK Crim. 3d 53:00:

'[L]ewd fondling or touching may be defined as a fondling or touching in a manner which tends to undermine the morals of the child, which is so clearly offensive as to outrage the moral senses of a reasonable person, and which is done with the specific intent to arouse or satisfy the sexual desires of either the child or the offender or both.'

"Clearly, the word 'lewd' is not equivalent to 'rude or insulting' as Banks contends. The evidence required to prove aggravated indecent liberties with a child would not prove this form of battery. Hence, battery is not a lesser included offense, and the court did not err in failing to give such an instruction." *Banks*, 28 Kan. App. 2d at 835-36.

## Attempted Aggravated Indecent Liberties With a Child

We also agree with the Court of Appeals' rejection of Banks' contention that an instruction should have been given on attempted aggravated indecent liberties with a child, even though Banks did not request such an instruction. The Court of Appeals concluded:

"As to the failure of the court to instruct on the offense of attempted aggravated indecent liberties with a child, it is important to note that Banks did not request such an instruction. The law is clear that in the absence of an objection, a party cannot complain of the failure to give an instruction unless that failure is clearly erroneous. [K.S.A. 2001 Supp. 22-3414(3)]. Both of the girls testified that Banks actually did touch them in a lewd manner. Banks did not claim he only attempted to touch the girls in a lewd manner. We hold that the trial court did not commit error on this issue because the evidence did not support a mere attempt." 28 Kan. App. 2d at 836.

See *State v. Robinson*, 261 Kan. 865, 882-83, 934 P. 2d 38 (1997).

## Prosecutorial Misconduct

Banks' final argument is that he was denied a fair trial because of prosecutorial misconduct in closing argument. We have reviewed the record and determined that the decision of the Court of Appeals correctly disposes of Banks' argument:

"Banks' last claim of error is that the State committed prosecutorial misconduct in its closing argument rendering this trial fundamentally unfair. Banks admits that he failed to object to statements made by the prosecutor in closing argument. [See *State v. McCorkendale*, 267 Kan. 263, 278-79, 979 P. 2d 1239 (1999) (setting forth test for alleged prosecutorial misconduct where defendant has failed to object).] We have considered the record and find there were no prosecutorial statements so gross and flagrant as to prejudice the jury against the defendant; even if there were, the evidence against the defendant was so overwhelming the prosecutor's remarks would not have changed the result of the trial. [267 Kan. at 279.] When viewed in their entirety, the prosecutor's statements made during the trial and during closing argument did not prejudice Banks and were at the most harmless error." 28 Kan. App. 2d at 836.

Affirmed.