No. 85,586

STATE OF KANSAS, *Appellee*, v. ANDREW T. DICKSON, *Appellant*.

69 P.3d 549

Review of the judgment of the Court of Appeals in 30 Kan. App. 2d 682, 46 P.3d 1216 (2002).

Opinion filed May 30, 2003.

*Randall L. Hodgkinson,* deputy appellate defender, argued the cause and was on the briefs for appellant.

*Lesley A. Isherwood,* assistant district attorney, argued the cause, and *Ian H. Taylor,* assistant district attorney, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Andrew Dickson appeals his convictions by a jury of three counts of rape, one count of aggravated indecent liberties with a child, and one count of criminal sodomy. The trial

court imposed a controlling sentence of 232 months' imprisonment. Dickson was sentenced to 232 months for rape on Count I and to lesser sentences on the remaining counts, all sentences to run concurrent. The Court of Appeals affirmed the defendant's convictions, vacated the sentence for Count IV (rape) as illegal, and remanded for resentencing on that count. *State v. Dickson*, 30 Kan. App. 2d 682, 46 P.3d 1216 (2002). Dickson filed a petition for review of the Court of Appeals' decision on the propriety of preliminary instructions, whether sufficient evidence supported the criminal sodomy conviction, and the trial court's failure to give a multiple acts unanimity instruction. This court granted the petition for review.

The evidence showed that K.D., M.D., and their family variously lived with and closely associated with Dickson and his family for 4 years, beginning when K.D. was 8 years of age and M.D. was 11 years of age. There was evidence of a number of times during those years when Dickson engaged in sexual activities with the girls. Additional facts are necessary only for the court's consideration of the sufficiency of the evidence to support the criminal sodomy conviction and are set out in the discussion of that issue.

Dickson first challenges the trial court's preliminary jury instruction. He contends the instruction improperly shifted the burden of proof on the element of venue to Dickson.

On this issue, the Court of Appeals stated:

"Dickson's challenge to the district court's preliminary instructions focuses on the following language: 'During the course of this trial, you will hear testimony in regard to certain locations within Sedgwick County. You may not visit these locations on your own, and you may not otherwise conduct your own investigation of these matters. All proper investigations have already been conducted.'

"Dickson did not object to this instruction at trial and must therefore demonstrate on appeal that the instruction was clearly erroneous, *i.e.*, persuade us that there was a real possibility the jury would have rendered a different verdict if the error had not occurred. See *State v. Evans*, 270 Kan. 585, 588, 17 P.3d 340 (2001).

"Dickson's first argument is that the instruction shifted the burden of proof on the element of venue to him. Once the State put on its evidence regarding the Sedgwick County locations of the various crimes, venue was never contested. We therefore conclude that any error in mentioning Sedgwick County in the instruction could not have made the difference between a guilty and not guilty verdict on the charges, particularly in the context of other preliminary and final instruc-

tions about the State's burden to prove Dickson's guilt and listing venue among the elements it must establish." 30 Kan. App. 2d at 683-84.

In his petition for review, Dickson simply reiterates the argument he made in the Court of Appeals. Although he contends that the burden of proof was improperly shifted to him on the element of venue, he does not contend that venue was in question. The Court of Appeals correctly concluded that no harm resulted from the instruction.

Dickson next contends the trial court improperly commented on the credibility of the State's witnesses.

On this issue, the Court of Appeals stated:

"Dickson also argues the last sentence in the same instruction ['All proper investigations have already been conducted'] constituted a favorable comment on the credibility of the State's witnesses. Because his convictions rested upon the inconsistent testimony of K.D. and M.D., he says, the judge's instruction was prejudicial. Dickson is correct that 'a judge should exercise great care and caution to say nothing within the hearing of the jury which would give them an indication of what he thought about the truth or falsity of any part of the testimony.' *State v. Boyd*, 222 Kan. 155, 159, 563 P.2d 446 (1977). However, we read the challenged sentence as being neutral. The court did not single out the State's investigators as especially competent or their results as especially trustworthy. A reasonable juror would assume that both sides in such a serious case had fully investigated its facts and prepared for trial. The inclusion of this sentence was not error.

"All of this being said, we are compelled to note that the instruction deviated substantially from its apparent model, PIK Civ. 3d 101.10(c). We do not disapprove of the district court's effort to ensure that jurors decide the case only on the evidence presented and not on any amateur sleuthing they might conduct at or near the locations described in the testimony. But our appellate courts have repeatedly advised district judges to use PIK language, absent particular facts requiring modification. See, *e.g.*, *State v. Moncla*, 262 Kan. 58, 71, 936 P.2d 727 (1997). Nothing about this case required the modifications that led to Dickson's arguments. Again, we urge district judges not to wander too far from PIK unless absolutely necessary." 30 Kan. App. 2d at 684.

In his petition for review, Dickson simply reiterates the argument he made in the Court of Appeals. He contends that the last sentence of the instruction improperly put the trial court's stamp of approval on the State's investigation. As the Court of Appeals aptly noted, however, what the jurors heard was not that the State

had investigated but rather that investigations had been conducted. As the Court of Appeals concluded, reasonable jurors would understand that investigations were conducted by both parties. We agree.

Dickson next argues that the evidence was insufficient to support the charge of criminal sodomy.

In Count III, Dickson was charged with causing M.D., a child 14 years of age, to engage in anal copulation or penetration of her anal opening with him, in violation of K.S.A. 21-3505(a)(3). In the Court of Appeals, Dickson conceded that he engaged in sodomy with M.D., an offense under K.S.A. 21-3505(a)(2), but he claimed there was no proof that he caused M.D. to engage in sodomy with any person or animal, as required under K.S.A. 21-3505(a)(3). The statute provides:

"(a) Criminal sodomy is:

(1) Sodomy between persons who are 16 or more years of age and members of the same sex or between a person and an animal;

(2) sodomy with a child who is 14 or more years of age but less than 16 years of age; or

(3) causing a child 14 or more years of age but less than 16 years of age to engage in sodomy with any person or animal.

"(b) It shall be a defense to a prosecution of criminal sodomy as provided in subsection (a)(2) that the child was married to the accused at the time of the offense.

"(c) Criminal sodomy as provided in subsection (a)(1) is a class B nonperson misdemeanor. Criminal sodomy as provided in subsections (a)(2) and (a)(3) is a severity level 3, person felony." K.S.A. 21-3505.

There is no dispute as to the evidence offered in support of the criminal sodomy charge. The following account was given by the Court of Appeals:

"According to the testimony supporting this count, Dickson, M.D.'s father, M.D., and two other children were watching television after school. After M.D.'s father fell asleep, Dickson, clad only in his underwear, covered himself and M.D.'s legs with a blanket. When M.D. moved the blanket, she saw Dickson's penis, and he asked her to hold it. She did not but replaced the blanket. M.D. tried to get away from Dickson, but he moved her to the top of his legs under the blanket. Dickson then pushed M.D.'s clothing aside and inserted his penis into M.D.'s anus. According to M.D., she had already been raped by Dickson on another

occasion when he had thrown her onto a bed and placed a pillow over her face until she passed out, and she was afraid of him." 30 Kan. App. 2d at 685.

For reasons not clear to us, the Court of Appeals believed that resolution of the issue was assisted by examining K.S.A. 21-3506, aggravated criminal sodomy, alongside K.S.A. 21-3505. K.S.A. 21-3506 provides:

"(a) Aggravated criminal sodomy is:
(1) Sodomy with a child who is under 14 years of age;
(2) causing a child under 14 years of age to engage in sodomy with any person or an animal; or
(3) sodomy with a person who does not consent to the sodomy or causing a person, without the person's consent, to engage in sodomy with any person or an animal, under any of the following circumstances:
(A) When the victim is overcome by force or fear;
(B) when the victim is unconscious or physically powerless; or
(C) when the victim is incapable of giving consent because of mental deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by the offender or was reasonably apparent to the offender.
"(b) It shall be a defense to a prosecution of aggravated criminal sodomy under subsection (a)(1) that the child was married to the accused at the time of the offense.
"(c) Aggravated criminal sodomy is a severity level 2, person felony."

In interpreting the statutory language, the Court of Appeals reasoned as follows:

"Subsections (2) and (3) were added to K.S.A. 21-3505(a) in 1992. See L. 1992, ch. 298, sec. 23. The fact that the legislature enacted both means that it saw some distinction between them. If both subsections prohibited exactly the same conduct, or one prohibited conduct that constituted nothing more than a subset of the conduct prohibited by the other, then one of the subsections would have been unnecessary. ' "[S]tatutes are construed to avoid unreasonable results. . . . There is a presumption that the legislature does not intend to enact useless or meaningless legislation." ' KPERS v. Reimer & Koger Assocs., Inc., 262 Kan. 635, 643, 941 P.2d 1231 (1997) (quoting Todd v. Kelly, 251 Kan. 512, 515-16, 837 P.2d 381 [1992]).

"It is apparent to us from the plain language of 21-3505(a)(2) and (a)(3) and 21-3506(a)(1) and (a)(2) that the legislature wanted to prohibit and punish sodomy involving a child 15 or younger in all cases with only one exception, although the severity of the punishment for the accused would vary depending on the age of the child. The one exception, under either 21-3505(b) or 21-3506(b), would apply when the child was married to the accused at the time of the act. Further, even

that exception would disappear if the married child did not consent under any of the circumstances listed in 21-3506(a)(3)(A) through (C). In such a situation, aggravated criminal sodomy could be charged.

"In this context, we believe consent also is key to distinguishing between K.S.A. 21-3505(a)(2) and K.S.A. 21-3506(a)(1) on the one hand and K.S.A. 21-3505(a)(3) and K.S.A. 21-3506(a)(2) on the other. The companion subsections of each statute can be differentiated and harmonized if the 'sodomy with' language of 21-3505(a)(2) and 21-3506(a)(1) is limited to a defendant's sodomy with a child of the designated age *when the child has expressed or exhibited a willingness* to engage in the act, and the 'causing' language of 21-3505(a)(3) and 21-3506(a)(2) is limited to a defendant's sodomy with such a child *when the child did not express or exhibit a willingness* to engage in the sexual activity, and yet none of the conditions set forth in 21-3506(a)(3)(A) through (C) apply. In addition, 21-3505(a)(3) and 21-3506(a)(2) cover a defendant who causes an unwilling child of the designated age to engage in sodomy with a person other than the defendant or with an animal, and yet none of the conditions set forth in 21-3506(a)(3)(A) through (C) apply.

"This interpretation recognizes and effectuates the legislature's clear goal of maximizing protection for the youngest and most vulnerable victims of sodomy, either because they have engaged in it against their will or because the legislature deems them too young to give a valid consent outside of marriage, while being careful not to criminalize mutually consensual sodomy between married partners of opposite genders, regardless of their ages. Although some of us might quarrel with certain of the legislature's policy choices underlying this statutory scheme, the policy choices are the legislature's to make.

"This interpretation also leads us to conclude that Dickson was properly charged under 21-3505(a)(3) and that there was sufficient evidence to convict him. He admits that he engaged in sodomy with M.D., and a reasonable factfinder could have concluded that M.D. was an unwilling participant. She testified about the earlier rape and its attendant battery. On this occasion, she tried unsuccessfully to get away from Dickson before he placed her on his lap under the blanket. Yet the evidence does not rise to the level of violence or menace usually seen in an aggravated criminal sodomy case in which the victim is overcome by force or fear or to prove one of the other factors listed in 21-3506(a)(3)(B) or (C). Rather, under these circumstances, a reasonable jury could conclude beyond a reasonable doubt that Dickson caused M.D. to engage in anal intercourse with him when M.D. had not expressed or exhibited a willingness to do so, in violation of K.S.A. 21-3505(a)(3)." 30 Kan. App. 2d at 686-88.

The resolution of this issue involves the interpretation of the relevant provisions of K.S.A. 21-3505(a)(3). In so doing, we are guided by certain rules of statutory construction which are applicable in the present case. Interpretation of a statute is a question

of law subject to unlimited review. The intent of legislature governs if that intent can be ascertained. *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 430, Syl. ¶ 1, 66 P.3d 822 (2003). In ascertaining that intent, we are not limited to consideration of the language used but look to historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. *State v. Le*, 260 Kan. 845, Syl. ¶ 3, 926 P.2d 638 (1996).

The Court of Appeals correctly stated that the two subsections of 21-3505 at issue were added to the criminal sodomy statute in 1992. The distinction between engaging in sodomy and causing someone to engage in sodomy, however, was made long before it was included in 21-3505.

In 1982, the Interim Special Committee on Judiciary drafted House Bill No. 2008 concerning sex offenses and penalties. The Interim Committee's report and draft were considered during the 1983 legislative session. Major issues considered by the Interim Committee included eliminating spousal immunity for rape and eliminating the victim's resistance as an element of rape. In the Interim Committee's draft, criminal sodomy was defined as "sodomy between persons who are members of the same sex; or between a person and an animal." The section of the Interim Committee's draft that defined aggravated criminal sodomy was where the distinction between the accused's engaging in sodomy with a child, subsection (a), and the accused's causing a child to engage in sodomy, subsection (b), appeared. The subsection (b) definition of aggravated criminal sodomy was "causing a child under 16 years of age to engage in sodomy with an animal."

The sodomy and aggravated sodomy sections of House Bill No. 2008 were both amended by the House Judiciary Committee, and the definition of sodomy was added as K.S.A. 21-3501(2). The committee changed the name of the offenses to criminal sodomy and aggravated criminal sodomy, and it amended the definition of aggravated criminal sodomy in subsection (b) by adding the phrase "any person." With the amendments, subsection (b) stated that aggravated criminal sodomy was "causing a child under 16 years of age to engage in sodomy with any person or an animal." Exami-

nation of the committee's minutes and attachments to the minutes reveals no legislative history regarding the addition of the phrase "any person." The addition of "any person" became part of the aggravated criminal sodomy section enacted by the legislature. See L. 1983, ch. 109, secs. 1, 5, and 6.

In 1992, the legislature amended the criminal sodomy and aggravated criminal sodomy sections to distinguish between sodomy with a child younger than 14 years of age and sodomy with a child 14 or more but less than 16 years of age. L. 1992, ch. 298, secs. 23, 24. At that time, the aggravated criminal sodomy distinction between engaging in sodomy with a child and causing a child to engage in sodomy was duplicated into the criminal sodomy section. The following pertinent changes were made to the criminal sodomy and aggravated criminal sodomy sections in 1992:

"Sec. 23. K.S.A. 21-3505 is hereby amended to read as follows: 21-3505. (1) Criminal sodomy is:

(a) Sodomy between persons who are *16 or more years of age and* members of the same sex or between a person and an animal;

*(b) sodomy with a child who is not married to the offender and who is 14 or more years of age but less than 16 years of age; or*

*(c) causing a child 14 or more years of age but less than 16 years of age to engage in sodomy with any person or animal.*

(2) Criminal sodomy *as provided in subsection (1)(a)* is a class B misdemeanor. *Criminal sodomy as provided in subsections (1)(b) and (1)(c) is a class C felony.*

"Sec. 24. K.S.A. 21-3506 is hereby amended to read as follows: 21-3506. Aggravated criminal sodomy is:

(a) Sodomy with a child who is not married to the offender and who is under ~~16~~ 14 years of age;

(b) causing a child under ~~16~~ 14 years of age to engage in sodomy with any person or an animal; . . . ." L. 1992, ch. 298, secs. 23, 24.

From this history, it is apparent that the initial purpose of the separate subsections was to make it an offense for the accused to cause a child to engage in sodomy with an animal as well as for the accused to engage in sodomy with a child. In the initial draft of H.B. 2008, the accused would be guilty of the offense of aggravated sodomy for causing the child to engage in sodomy with an animal even though the accused was not a participant in the sodomy. Thus, there were two essential differences between the subsections.

First, the child would engage in sodomy with a person in one and an animal in the other. Second, the accused would engage in sodomy with the child in one but the accused would not engage in sodomy with the child in the other.

When the House Judiciary Committee added "any person" to "an animal" in the causing-to-engage-in-sodomy subsection, the crisp boundary between the two subsections evaporated. As we have stated, there was no legislative history regarding the reasons for this amendment. It reasonably may be inferred from the casual and wholly unremarked manner of the addition to an uncontroversial provision that it was not intended to fundamentally change the section or the logical association between the subsections. The purpose of the House Judiciary Committee's addition was to broaden the causing-to-engage-in-sodomy subsection to include the accused's causing a child to engage in sodomy with a person as well as with an animal. Thus, the first distinction identified in the preceding paragraph—the child engaging in sodomy with a person in one subsection and with an animal in the other—was purposefully eliminated by the amendment. The "other" distinction is that the nature of one offense is that the accused engages in sodomy with the child in one subsection but not in the other. In order for that distinction to be maintained, the subsections must be construed so that one prohibits the accused's engaging in sodomy with a child and the other prohibits the accused from causing a child to engage in sodomy either with another person or with an animal.

If the House Judiciary Committee's amendment had been intended to eliminate the "other" distinction between the subsections, there would have been no reason for the legislature to retain the first subsection. That is, if the House Judiciary Committee's intent by adding "any person" to the second subsection was to include the accused within the meaning of "any person," the first subsection would have been rendered redundant. We may presume that the House Judiciary Committee would not formulate one subsection that made another redundant and then retain both. The enduring nature of the distinction between the accused engaging in sodomy with the child and causing the child to engage in sodomy with another person may be seen in the legislature's

retaining separate subsections in 1983 and in subsequent modifications in 1992 and 1993.

In addition to the absence of any indication in the legislative history that willingness to engage in sodomy was a reason for the legislature's adoption of separate subsections, there is no indication in the current statutory language that the legislature intended 21-3505(a)(2) to prohibit sodomy with a willing child and 21-3505(a)(3) to prohibit sodomy with an unwilling child. Nor is there any differentiation in the penalties for violations of the two subsections, as one might expect if the victim's resistance was a factor. "Criminal sodomy as provided in subsections (a)(2) and (a)(3) is a severity level 3, person felony." K.S.A. 21-3505(c).

In its construction of the statutory language, the Court of Appeals considered the marriage defense provisions, subsections (b) of 21-3505 and 21-3506, to support its conclusion that the willingness, *i.e.*, consent, of the victim distinguishes 21-3505(a)(2) from 21-3505(a)(3). 30 Kan. App. 2d at 687-88. The Court of Appeals stated that its interpretation "effectuates the legislature's clear goal of maximizing protection for the youngest and most vulnerable victims of sodomy, either because they have engaged in it against their will or because the legislature deems them too young to give a valid consent outside of marriage . . . ." 30 Kan. App. 2d at 688.

We find the above rationale is not supported by the plain language of the statute. Further, K.S.A. 21-3505(a)(2) and (3) cannot be reasonably interpreted as reflecting the willingness or unwillingness of the child in order to effectuate the legislative purpose of protecting vulnerable children. K.S.A. 21-3505(b) provides that it is a defense to a prosecution of criminal sodomy with a child who is 14 or more years of age but less than 16 years of age that the child and the accused were married at the time of the offense, but it provides no defense to a prosecution of causing a child who is 14 or more years of age but less than 16 years of age to engage in sodomy with a person or animal. Clearly, in this way, the legislature made marriage a defense to sodomy between the marriage partners but provided protection from extramarital sodomy to victims deemed too young to give a valid consent outside of marriage. The defense provision of 21-3506(b) makes the same distinction in re-

stricting the marriage defense to subsection (a)(1), sodomy with a child under 14 years of age. Clearly, the "person" in 21-3505(a)(3) is not the person who is charged with violating 21-3505(a)(2).

Appellate courts do not speculate as to legislative intent in passing a statute, nor read such statute so as to add something not readily found in the statute. *State v. Lawson*, 261 Kan. 964, 966, 933 P.2d 684 (1997). The Court of Appeals did just that in interpreting K.S.A. 21-3505(a)(2) and (3) as reflecting the willingness or unwillingness of the child and, in fact, by adding an element of proof which tends to undermine the legislative purpose of protecting vulnerable children. The State's burden of proof with regard to the victim is simply to establish the child's age. The State's burden would be increased substantially if the child's state of mind were an element of proof.

As a part of its reasoning, the Court of Appeals stated that the marriage defense "would disappear if the married child did not consent under any of the circumstances listed in 21-3506(a)(3)(A) through (C)." 30 Kan. App. 2d at 687. The concept is included in the Court of Appeals' Syllabus ¶ 3, which disregards the restriction of the marriage defense in 21-3506(b) to violations of 21-3506(a)(1) and assumes that a child under 14 years of age is a person within the meaning of 21-3506(a)(3). The penalty for aggravated criminal sodomy is the same for violation of any subsection of 21-3506. See K.S.A. 21-3506(c). There would be no reason to charge an offense involving sodomy with a child under 14 years under subsection (a)(3), which requires proof of elements other than sodomy and the age of the victim. We find that reasoning faulty and contrary to the rules of statutory construction.

The legislative history and legislative intent that reasonably can be inferred support construction of K.S.A. 21-3505(a)(2) and (3) as prohibiting the accused's engaging in sodomy with a child and the accused's causing a child to engage in sodomy with a person other than the defendant or an animal respectively. The remaining question is what effect this interpretation should have on Dickson's conviction under 21-3505(a)(3).

In its brief in the Court of Appeals, the State did not address the questions of sufficiency of the evidence and statutory interpre-

tation. Instead, it took the position that the actual issue was a defective charging document and that Dickson had failed to show prejudice as required for such a challenge. This is not, however, a case of a claimed defect in the complaint. There is no claim that the complaint's count of criminal sodomy has missing, inadequate, or incorrect elements. The claim, instead, is that the State's trial evidence proved a violation of a different subsection of the criminal sodomy statute than the one charged.

In similar circumstances, our appellate courts have refused to uphold a conviction when the State fails to prove the offense charged, even if the evidence establishes some other offense the State did not charge. See *State v. Houck*, 240 Kan. 130, 136, 727 P.2d 460 (1986); *State v. McMannis*, 12 Kan. App. 2d 464, 466, 747 P.2d 1343 (1987), *rev. denied* 242 Kan. 905 (1988); *State v. Schad*, 247 Kan. 242, 246, 795 P.2d 406 (1990). In *Houck*, the defendant was charged with and convicted of aggravated arson of a building in which another person had an interest without the other person's consent. In fact, the mortgagee had a lien rather than an ownership interest and the insurer had no legal interest in the property. On this ground, Houck challenged "the sufficiency of the evidence to convict him of the specific charges of aggravated arson made against him in the information." The court found merit in his argument:

"The State has the responsibility to appropriately charge the accused with the crime it believes the accused has committed. If the evidence introduced at trial does not support a conviction of the offense charged, the accused cannot be found guilty of some other offense which the State did not see fit to charge. Here, the State did not prove the charges it brought against Houck and, therefore, the convictions of aggravated arson must be reversed." 240 Kan. at 136.

In *McMannis*, the defendant was charged with and convicted of possession of amphetamines with intent to sell. The uncontroverted evidence was that the illegal substance found in McMannis' possession was methamphetamine, which is assigned a different controlled substance code number from amphetamine. The Court of Appeals stated:

"The information-evidence-verdict relationship presented by this appeal is similar to the situation in *State v. Houck*, 240 Kan. 130, 727 P.2d 460 (1986). In

*Houck*, the defendant was charged and convicted of committing aggravated arson under K.S.A. 21-3718(1)(a) and K.S.A. 21-3719. However, the evidence of the case was that defendant committed aggravated arson under a different section of the statute, K.S.A. 21-3718(1)(b); K.S.A. 21-3719. The court reversed the conviction of aggravated arson . . . .

"The evidence may establish that defendant McMannis committed a crime; however, it was neither the crime alleged in the information nor the crime on which the jury was instructed and the defendant convicted.

. . . .

"The State contends McMannis's conviction should be affirmed because the evidence established that defendant possessed a stimulant with intent to sell. A conviction cannot be upheld when the State fails to prove the offense charged, even if the evidence establishes some other offense the State did not charge. *Houck*, 240 Kan. at 136." 12 Kan. App. 2d at 465-66.

In *Schad*, the defendant was the mother of a young child. She, along with two friends, touched the child's vaginal area with their tongues. For her own improper touching, Schad was charged with engaging in oral copulation with the child under the aggravated incest statute. For her involvement in her friends' improper touching of the girl, Schad was charged with several counts of causing a child to engage in oral sodomy under the aggravated criminal sodomy statute. Under the statutory definitions in effect at the time of the offenses, sodomy was oral or anal copulation and cunnilingus did not constitute oral copulation. Even though the facts would have supported charging Schad with other offenses, the facts did not support charging her with aggravated criminal sodomy. Thus, the court reversed her convictions for that offense. 247 Kan. at 244-46. Here, Dickson was charged with criminal sodomy under K.S.A. 21-3505(a)(3), whereas the evidence established a violation of K.S.A. 21-3505(a)(2). Thus, we must reverse the conviction of criminal sodomy and vacate the sentence for that conviction. In so doing, Dickson's controlling sentence of 232 months' imprisonment is not affected.

Finally, Dickson contends that the trial court's failure to give a multiple acts unanimity instruction constituted reversible error.

On this issue, the Court of Appeals stated:

"Dickson next takes issue with the district court's failure to give the jury a multiple acts unanimity instruction. He argues that he was entitled to such an

instruction because the State presented evidence of multiple rapes of K.D. and multiple acts of her oral contact with his genitalia.

"'In multiple acts cases, several acts are alleged and any one of the acts could constitute the crime charged. When the prosecution presents evidence of several acts that could form the basis of one count charged, either the State must inform the jury which act to rely on in its deliberations or the court must instruct the jury to agree on a specific criminal act.' *State v. Dean*, 272 Kan. 429, Syl. ¶ 5, 33 P.3d 225 (2001).

"This argument is without merit. Both in opening statement and again in closing argument, the prosecutor informed Dickson's jury exactly which single incident the State was relying upon to convict on each of the rape counts and on the criminal sodomy count having to do with K.D. There was no multiple acts error because the State made the required election or its functional equivalent. See *State v. Fulton*, 28 Kan. App. 2d 815, 822, 23 P.3d 167, *rev. denied* 271 Kan. 1039 (2001)." 30 Kan. App. 2d at 688-89.

Dickson complains that the Court of Appeals failed to analyze the issue as outlined in *State v. Banks*, 273 Kan. 738, 46 P.3d 546 (2002), and *State v. Hill*, 271 Kan. 929, Syl. ¶ 3, 26 P.3d 1267 (2001). In other words, Dickson contends that the Court of Appeals erroneously failed to apply the two-step harmless error analysis established in *Hill* and applied in *Banks*.

With regard to multiple acts cases, this court has stated:

"[W]here several acts are alleged and any one of them could constitute the crime charged, the jury must be unanimous as to which act or acts constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of the jurors must agree that the same underlying criminal act has been proved without a reasonable doubt. [Citations omitted.]" *State v. Smith*, 268 Kan. 222, 230, 993 P.2d 1213 (1999).

In other words, error arises in multiple acts cases where the jury was not informed that its decision as to which act or acts constitutes the crime must be unanimous. Where the State makes an election or the trial court instructs the jury on unanimity, there is no error. Where there is no error, the harmless error analysis is not necessary.

In this case, the prosecutor informed the jury which single incident the State was relying upon to convict Dickson on each of the rape counts and on the criminal sodomy count having to do with K.D. The Court of Appeals did not reach the harmless error

analysis because, in finding that the State made the "functional equivalent" of an election, the Court of Appeals found no error. 30 Kan. App. 2d at 689. We agree.

Dickson's conviction of criminal sodomy in violation of K.S.A. 21-3505(a)(3) is reversed and his sentence for that offense is vacated. Dickson's convictions for rape and aggravated criminal sodomy are affirmed.

The Court of Appeals is affirmed in part and reversed in part. The district court is affirmed in part and reversed in part.

ABBOTT and GERNON, JJ., not participating.
LARSON, S.J., and WAHL, S.J., assigned■