(122 P.3d 397)

No. 91,867

STATE OF KANSAS, *Appellee*, v. BOBBY L. JOHNSON, *Appellant*.

 

*Randall L. Hodgkinson,* appellate defender, for appellant.

*Robert D. Hecht,* district attorney, *Amy Memmer,* assistant district attorney, and *Phill Kline,* attorney general, for appellee.

Before RULON, C.J., GREENE, J., and BRAZIL, S.J.

GREENE, J.: Bobby L. Johnson appeals his conviction for aggravated indecent solicitation of a child, alleging that the district court lacked jurisdiction over the offense, that the district court improperly refused to admit impeachment evidence, and that prosecutorial misconduct prejudiced the jury. We affirm.

*Factual and Procedural Background*

Johnson offered to take two children of his girlfriend to the park so that their mother could rest. After 4-year-old D.M. "peed [her] pants" she returned to Johnson's truck, where he seated her either next to him or on his lap, pulled his pants down to his shoes, "wiggled" his "private," and masturbated in D.M.'s presence, "leaking" some of the seminal fluid on D.M.'s clothes. D.M. initially told her mother that Johnson also asked her to "drink the milk," but she did not confirm this aspect of her story at trial. Upon hearing her story, D.M.'s mother called authorities, and their investigation included taking DNA samples from D.M.'s shorts, which were consistent with Johnson's DNA obtained from a saliva sample.

The State originally charged Johnson with aggravated indecent liberties with a child under K.S.A. 21-3504(a)(3)(A), but ultimately filed an information with an amended charge of aggravated indecent liberties with a child under K.S.A. 21-3504(a)(3)(B). At trial the State proposed a lesser included instruction on aggravated indecent solicitation of a child under K.S.A. 21-3511, but never filed

an amended complaint charging Johnson in the alternative. Johnson's counsel did not object to the lesser included instruction and, in fact, agreed that it was proper.

The jury acquitted Johnson of aggravated indecent liberties with a child but convicted him of aggravated indecent solicitation of a child. Johnson appeals his conviction.

*Did the District Court have Jurisdiction to Convict Johnson of Aggravated Solicitation of a Child?*

Johnson's principal challenge on appeal is to the district court's jurisdiction to convict and sentence him because the statutory elements of the lesser included offense were "not identical to some of the elements of the charged crime," citing *State v. Dickson*, 275 Kan 683, 69 P.3d 549 (2003). If a crime is not specifically stated in the information or is not a lesser included offense of the crime charged, the district court lacks jurisdiction to convict the defendant of the crime, regardless of the evidence presented. *State v. Horn*, 20 Kan. App. 2d 689, Syl. ¶ 1, 892 P.2d 513, *rev. denied* 257 Kan. 1094 (1995).

The amended principal charge against Johnson was aggravated indecent liberties with a child as defined in K.S.A. 21-3504(a)(3)(B). The material subsections of the statute state:

"(a) Aggravated indecent liberties with a child is:

. . . .

(3) engaging in any of the following acts with a child who is under 14 years of age:

(A) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both; or

(B) soliciting the child to engage in any lewd fondling or touching of the person of another with the intent to arouse or satisfy the sexual desires of the child, the offender or another."

Johnson argues that we should construe K.S.A. 21-3504(a)(3)(B) in a manner similar to the construction of K.S.A. 21-3505(a)(3) embraced by our Supreme Court in *Dickson*. In *Dickson*, the court contrasted similar subsections of the criminal sodomy statutes, K.S.A. 21-3505(a)(2) and (a)(3), which state:

"(a) Criminal sodomy is:

. . . .

(2) Sodomy with a child who is 14 or more years of age but less than 16 years of age; or

(3) causing a child 14 or more years of age but less than 16 years of age to engage in sodomy with any person or animal."

The court then reviewed the legislative history and concluded that the subsections must be construed so that one ([a][2]) prohibits the accused's engaging in sodomy with a child and the other ([a][3]) prohibits the accused from causing a child to engage in sodomy either with another person or with an animal. Because Dickson had *himself* engaged in the wrongful conduct with children but was charged under K.S.A. 21-3505(a)(3), requiring the involvement of another person, the court reversed his conviction of criminal sodomy. 275 Kan. at 695.

Johnson argues:

"Following the *Dickson* rationale, a charge under K.S.A. 21-3504(a)(3)(B) even more clearly requires a showing of involvement of a third party. The language of the statute itself requires a showing of 'soliciting the child to engage in any lewd fondling or touching of the *person of another*,' K.S.A. 21-3504(a)(3)(B). (Emphasis added.) And the legislative history behind the predecessor to K.S.A. 21-3504(a)(3)(B) shows that the *Dickson* Court's rationale applies in exactly the same way. See Supplemental Note on 1987 H.B. 2010 (noting that subsection that would eventually be K.S.A. 21-3504[a][3][B] was designed to cover fact scenarios 'in which the perpetrator encouraged the child to commit illegal acts with a third party.')"

We agree. K.S.A. 21-3504(a)(3)(B) prohibits soliciting the child to engage in lewd fondling or touching *of the person of another*. It is unfortunate that the prosecution elected to charge Johnson under K.S.A. 21-3504(a)(3)(B) rather than 3504(a)(3)(A). Here, as in *Dickson*, the defendant was charged under the wrong statutory subsection, and had he been convicted, it could not have been upheld. See *State v. Houck*, 240 Kan. 130, 136, 727 P.2d 460 (1986).

Unlike Dickson, however, Johnson was not convicted of the principal charge but rather a purported lesser included offense under K.S.A. 21-3511(a), which provides:

"Aggravated indecent solicitation of a child is:

(a) Enticing or soliciting a child under the age of 14 years to commit or to submit to an unlawful sexual act."

"Unlawful sexual act" is defined in K.S.A. 21-3501(4) as "any rape, indecent liberties with a child, aggravated indecent liberties with a child, criminal sodomy, aggravated criminal sodomy, lewd and lascivious behavior, sexual battery or aggravated sexual battery, as defined in this code."

Comparing the elements of the principal charge with those of the lesser included, aggravated indecent liberties with a child is established by proof of the following elements: (1) soliciting, (2) a child under the age of 14, (3) to engage in lewd fondling or touching of the person of another, (4) with the intent to arouse or satisfy the sexual desires of the child, the offender, or another. See K.S.A. 21-3504(a)(3)(B). In contrast, aggravated indecent solicitation of a child, as the jury was instructed in this case, is established by the following elements: (1) enticing or soliciting; (2) a child under the age of 14; (3) to commit or submit to an unlawful sexual act. See K.S.A. 21-3511(a). As noted above, "unlawful sexual act" is expressly defined by statute to include aggravated indecent liberties with a child. See K.S.A. 21-3501(4).

Given this strict application of the elements test, we are at a loss to identify any element of the lesser charge (as applicable to Johnson) that is not also included in the principal charge. K.S.A. 21-3511(a) criminalizes any solicitation of a child under the age of 14 to engage in conduct that includes by definition aggravated indecent liberties. Whereas the principal charge here was limited to "soliciting the child to engage in any lewd fondling or touching . . . of another," the purported lesser included offense was not limited to acts involving a third person, *but clearly included these elements*. Applying the identity of elements test, we have no difficulty concluding that all the elements of the lesser included offense are among the statutory elements required to prove the principal crime charged. See *State v. Belcher*, 269 Kan. 2, 4-5, 4 P.3d 1137 (2000).

The district court properly provided the jury with an instruction on aggravated indecent solicitation of a child as a lesser included

offense of aggravated indecent liberties with a child. The mere fact that the evidence was arguably insufficient to support a conviction under K.S.A. 21-3504(a)(3)(B) does not affect the jurisdiction of the court to impose a sentence for a conviction under a proper lesser included offense. Indeed, lesser included instructions are given precisely because the evidence may not support a conviction under the more severe offense. As noted in the brief, the defendant does not challenge the sufficiency of the evidence with respect to his conviction under K.S.A. 21-3511(a), he merely argues that he cannot be convicted of the lesser charge if the principal charge was defective.

Contrary to Johnson's argument, however, any error in selecting the principal charge or deficiency in the evidence to support that charge does not divest the court of jurisdiction to convict of a proper lesser included offense. In *State v. Kingsley*, 252 Kan. 761, 851 P.2d 370 (1993), the defendant was convicted of aggravated arson, in addition to a number of other offenses. The evidence demonstrated that the victim was dead before the defendant set fire to the house. In light of previous case law, the Kansas Supreme Court reasoned that aggravated arson required the presence of a living person within the building subject to the arson. 252 Kan. at 780-82. Because the defendant had killed the victim before setting fire to the house, the evidence was insufficient to support a conviction for aggravated arson, and the district court had not instructed the jury on the lesser included offense of simple arson. The court stated:

"There was, however, sufficient evidence to support the lesser included offense of arson. Where a defendant has been convicted of the greater offense but evidence supports only a lesser included offense, the case must be remanded to resentence the defendant for conviction of the lesser included offense. *State v. Moss*, 221 Kan. 47, 50, 557 P.2d 1292 (1976); *State v. Smith*, 4 Kan. App. 2d 149, 153, 603 P.2d 638 (1979)." 252 Kan. at 782.

Here, Johnson was charged with an offense of which he could not be convicted, according to the reasoning of *Dickson*. As in *Kingsley*, the charged offense creates a legal impossibility under the facts of the case. Johnson could not be convicted of aggravated indecent liberties with a child under K.S.A. 21-3504(a)(3)(B) under

the reasoning of *Dickson*, but he could validly be convicted of aggravated indecent solicitation of a child under K.S.A. 21-3511, which does not require the criminal defendant to solicit illegal conduct between the child and a person other than the defendant, even though the statute also encompasses such conduct. Under the reasoning of *Kingsley*, it appears that Johnson could have been sentenced to aggravated indecent solicitation of a child even if the instruction had not been given and he had been convicted of aggravated indecent liberties with a child under K.S.A. 21-3504(a)(3)(B). See *State v. Moore*, 269 Kan. 27, 4 P.3d 1141 (2000) (insufficient evidence of robbery because no evidence of threat in connection with taking; remanded for resentencing for theft as lesser included offense); *State v. Burns*, 23 Kan. App. 2d 352, 360-62, 931 P.2d 1258, *rev. denied* 262 Kan. 963 (1997) (evidence insufficient to support rape, but court had authority to convict for lesser included offense of aggravated indecent liberties with a child).

We conclude that Johnson was properly convicted of aggravated solicitation of a child under K.S.A. 21-3511(a), notwithstanding the legal impossibility of convicting him of the principal offense. His argument that the district court was without jurisdiction to convict him on the lesser offense is rejected.

*Was the District Court's Refusal to Admit the Statement of an Unavailable Witness for Impeachment Purposes Reversible Error?*

Johnson next argues that the district court erred in refusing to admit the hearsay statements of an investigating officer, who was unavailable due to military service in Iraq. He contends that the hearsay statements were admissible as a statement of an unavailable witness under K.S.A. 2004 Supp. 60-460(d)(3).

The admission of evidence lies within the sound discretion of the district court, and an appellate court may reverse an evidentiary ruling only upon a finding that such discretion was abused, which is to say the district court's decision, under the circumstances of the case, was arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the district court's action,

the decision does not constitute an abuse of discretion. See *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d 406 (2004).

The statements at issue here are within a written report completed by the officer shortly after going to the home of D.M. to take an oral swab for DNA comparison. During his visit to D.M.'s home, her mother informed the officer, "B.J. is a con artist, and while her brother's girlfriend was at the house one day, he came outside of a bedroom with no clothes on and was masturbating." During cross-examination of the mother, defense counsel questioned her about this statement and she denied making the statement but claimed that she had told the officer, "I heard that he masturbated in front of his son's girlfriend."

The officer's report contains double hearsay. The officer's out-of-court statement regarding the mother's disclosure to him is hearsay, and this statement includes the hearsay statements made by the mother. Before admitting the evidence, the district court had to be convinced that exceptions applied to each hearsay statement presented in the request for admission of the deputy's report. See *State v. Davis*, 2 Kan. App. 2d 698, 699, 587 P.2d 3 (1978), *rev. denied* 225 Kan. 846 (1979).

The defendant argues that the officer's report was designed to accurately record statements or observations as they were perceived, and that the report falls within the hearsay exception provided in K.S.A. 2004 Supp. 60-460(d)(3), which provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(d) *Contemporaneous statements and statements admissible on ground of necessity generally.* A statement which the judge finds was made . . . (3) if the declarant is unavailable as a witness, by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort."

Even if we concede as applicable the "recently perceived" element of this exception (which is doubtful), the report fails to meet the other criteria for this exception because the statement was made

*after* litigation in this matter had commenced with the filing of a criminal complaint against the defendant.

Furthermore, admission of the police report under 60-460(d)(3) provides no hearsay exception for the mother's statements made within the report. See *Davis*, 2 Kan. App. 2d at 699. Prior inconsistent statements might be admissible nonhearsay if used exclusively for impeachment without regard to the veracity of the statements, but this argument was never made to the district court. This court may not reverse a verdict or finding by the district court absent a timely and specific objection of record. K.S.A. 60-404. Appellate courts have often refused to consider on appeal a different objection to the admission or exclusion of evidence than the objection lodged before the district court. See, *e.g.*, *State v. Bryant*, 272 Kan. 1204, 1208, 38 P.3d 661 (2002).

We also note that further impeachment of mother's credibility would not likely have changed the jury's assessment about the facts of this case because her testimony was relatively minor given other evidence. D.M. testified about the defendant's conduct in the park; her brother testified about visiting the park; and two witnesses testified about the physical DNA evidence extracted from D.M.'s shorts. The jury chose to believe the State's version of events. The mere possibility that mother's credibility would be further damaged by the admission of the officer's report is insufficient to cast doubt upon the jury's verdict. The defendant's argument, in this regard, provides no basis for relief. See *State v. Flournoy*, 272 Kan. 784, 805, 36 P.3d 273 (2001) ("The erroneous admission of rebuttal evidence is not grounds for reversal unless discretion has been abused to defendant's prejudice.").

*Did Prosecutorial Comments During Closing Arguments Unduly Prejudice the Jury Against the Defendant?*

Finally, Johnson argues that the prosecutor impermissibly buttressed the credibility of the child victim and appealed to the community's sense of value, invoking images designed to inflame the passions or prejudices of the jury.

Our standard of review of such issues is well established. This court first considers whether the prosecutor's comments exceed

the wide latitude afforded attorneys to discuss the evidence presented at trial. If the comments fall outside the scope of reasonable extrapolation of the evidence, the court then considers whether, in light of the facts of the particular case, the comments were so gross and flagrant as to prejudice the defendant's right to a fair trial. If such prejudice has occurred, the comments warrant reversal for a new trial, despite the lack of a contemporaneous objection. See *State v. Robertson*, 279 Kan. 291, 303, 109 P.3d 1174 (2005).

In support of his argument that the prosecutor personally vouched for the credibility of the child victim, the defendant quotes four passages taken out of context from the prosecutor's closing argument. In the context of discussing the victim's testimony, the prosecutor highlighted the circumstances in which the defendant's inappropriate conduct was revealed. The prosecutor then argued how these circumstances supported a conclusion that the victim was not merely repeating a story created by her mother to harm the defendant. The prosecutor stated:

" 'Out of the mouths of babes.' You know, children do not use the same words we use, they don't understand the same vocabulary, and they do not understand things unless they've experienced them, themselves. The words of a child in this case I think are—I will submit to you that the evidence is very clear. Milk; what did it look like? It was white, it was milk. 'Drink the milk.' 'He wanted me to drink the milk.' What is this child's frame of reference at the age of four? You must ask yourselves that question when you ask whether she is using a description and words that she would use or that were planted to her."

After mentioning the corroborating testimony of D.M.'s brother, the prosecutor further stated:

"Consider, if you will, the development of this child at four years of age. The concepts of time to a four-year-old. What are they? You all know that, from your common sense and your experience . . . thinking in concrete, not abstract, something is either there or it isn't for a child. Clothing is either on or off for a child. They do not think in abstract terms, timing being an abstract concept. Do children mix days and events? You all know that from your common experience, and a year — over a year later?

"You must decide the weight and credit to give each of these children and whether you believe they're telling you the truth. The State will submit to you when you consider these things, the credibility of these children is high and they must be believed."

Finally, during her rebuttal argument in response to defense attacks about the inconsistencies in D.M.'s statements as demonstration of K.C.'s influence over D.M.'s allegations, the prosecutor argued:

"And wouldn't you rehearse with this child over and over to make sure that child was going to do what you so brilliantly set up and concocted? To go down this path, the defense wants you to believe you have to believe that [K.C.] planted this seminal fluid on those shorts. To believe that path, you have to go—that just does not meet with your common sense that you all said that you brought. The State would submit that the path that is the truth is the path that really explains how come this defendant's DNA, his seminal fluid, his sperm are on this little girl's shorts.

"It's because he ejaculated on her in that truck and she told the truth when he said he wanted—when she said, 'He wanted me to lick it. He wanted me to lick it, to drink the milk.' That is what that child heard. If we have led her would she have said it? Who knows? She certainly wasn't very rehearsed. If she was so easily suggested, she didn't evidence that to you in court, but you heard her on the tape a year ago disclose what everyone else who she disclosed [it] to described to you, and that is that he solicited her and then he ejaculated on her, and he solicited her with the intent to arouse himself."

Johnson cites *State v. Cheeks*, 253 Kan. 93, 101-02, 853 P.2d 655 (1993), and *State v. Jackson*, 239 Kan. 463, 469-70, 721 P.2d 232 (1986), for the proposition that the State cannot operate as a lie detector for the testimony of a child witness. *Cheeks* and *Jackson* are distinguishable to the extent that the court in these cases focused upon and disapproved of expert testimony informing the jury whom to believe; here, the claim challenges the prosecutor's comments on veracity. Moreover, unlike the expert witnesses in *Cheeks* and *Jackson*, the prosecutor in this case did not personally invest her belief in the child victim's credibility. Rather, the prosecutor argued that the manner and circumstances of D.M.'s allegations of inappropriate sexual conduct by the defendant lend credibility to her testimony. In essence, the prosecutor was urging the jurors to use their collective knowledge of 4-year-old children to determine whether D.M.'s statements were false or rehearsed. This is proper argument.

The defendant also contends that the prosecutor attempted to inflame the passions and prejudices of the jury by speaking of the vulnerability of children. In rebuttal, the prosecutor stated, in part:

"It is easy to select a child. Children are the most vulnerable people in our society. Easy to select a child. They can be discredited; therefore, they have inconsistencies. Everyone knows that, but when you end up with physical proof of seminal fluid on that very child's shorts, what are you going to do? How are you going to explain that away?"

This passage is in the context of a challenge to the credibility of Johnson's version of events and his attack on the child's credibility. To the extent that these comments seem designed to appeal to a parental inclination to protect children, they were improper argument. See *State v. Ruff*, 252 Kan. 625, 636, 847 P.2d 1258 (1993) ("The prosecutor is under a duty to insure that only competent evidence is submitted to the jury. Above all, the prosecutor must guard against anything that could prejudice the minds of the jurors and hinder them from considering only the evidence adduced.").

Nevertheless, these few improper statements are not so gross or flagrant as to prejudice the jury and deprive the defendant of a fair trial. In the light of the physical evidence and the persuasive testimony by the prosecution witnesses, there is virtually no possibility that the improper remarks about children's vulnerability played a material part in the jury's deliberations.

Affirmed.