The opinion of the court was delivered by Beier, J.:
*499 In this appeal, the State challenges the Court of Appeals' decision to reverse the conviction of defendant Loarn Earl Fitzgerald, II, for aggravated criminal sodomy because insufficient evidence was presented of the crime as charged. We agree that reversal is necessary.
FACTUAL AND PROCEDURAL BACKGROUND
K.L. and her daughter, C.C., lived in a small home with Fitzgerald and others for a few months in late 2012 and early 2013. A few months after K.L. and C.C. moved, K.L.'s friend asked C.C. about what to do if anyone touched her "bad spots." C.C. responded that she should tell her mother. K.L. then asked C.C. if anyone had touched or hurt her. At that point, C.C. said Fitzgerald had "been doing bad things to her" and proceeded to describe those acts. C.C. told her mother that Fitzgerald "was making her touch his private areas, and he was touching her private area, and he was making her suck on him."
Detective Troy Cochran of the Arkansas City Police Department met with K.L. and C.C. to conduct a recorded interview about C.C.'s allegations. During the interview, C.C. gave many details of the house where she and her mother had lived with Fitzgerald, the bedroom in which the abuse occurred, and the abuse itself.
C.C. told Cochran that Fitzgerald had inappropriately touched her butt with his hand. She also demonstrated how he put his hand on her butt and "rubbed it." C.C. also told Cochran that Fitzgerald said he wanted to "squirt something in [her] mouth" and that "he wanted to go downstairs." When she refused, he told her to think about it. C.C. also said Fitzgerald had told her he wanted to use his "bad spot" to squirt something in her mouth or her own "bad spot." She said that the first time Fitzgerald sexually assaulted C.C., they were in his bedroom; she was sitting on the bed and he was standing on the floor. C.C. described the size of Fitzgerald's penis when he forced it into her mouth and showed Cochran how Fitzgerald grabbed the back of her head while he sodomized her. This general pattern was repeated at least 16 times in the bedroom. C.C. alleged that no one else was in the house when the abuse occurred, except for one occasion when Fitzgerald's mother was in the house.
According to C.C., Fitzgerald would promise to let her play with his Xbox and would ask what else she wanted in exchange for sexual acts. She was afraid to tell anyone because she thought Fitzgerald would get angry with her.
C.C. also told Cochran she had not been forced to touch the "bad spot" of anyone other than Fitzgerald, and no one else had touched her "bad spot" or buttocks.
The State charged Fitzgerald with aggravated criminal sodomy by "feloniously [causing C.C.] (DOB: 02/21/2004), a child under 14 years of age, to engage in oral copulation with another person" in violation of K.S.A. 2017 Supp. 21-5504(b)(2) and (c)(3).
Although the State charged Fitzgerald with causing C.C. to engage in oral copulation "with another person," all parties thereafter proceeded with the case as though Fitzgerald had been charged with engaging in sodomy with C.C. himself. Compare K.S.A. 2017 Supp. 21-5504(b)(2) ("causing a child under 14 years of age to engage in sodomy with any person") with K.S.A. 2017 Supp. 21-5504(b)(1) ("[s]odomy with a child who is under 14 years of age").
The prosecutor's opening statements included comments such as: "[C.C.] told her mother about some sexual acts that had been perpetrated on her by the defendant, Loarn Fitzgerald"; "[C.C.] told her mom some of the things [Fitzgerald] had done to her"; and "[C.C.] is going to explain what [Fitzgerald] did to her." Fitzgerald's counsel made similar statements that focused on Fitzgerald's interactions with C.C.: "We'll ask about whether there were any physical characteristics *500 [C.C.] could describe which would pinpoint [Fitzgerald]."
All of C.C.'s testimony concerned Fitzgerald perpetrating the sodomy personally. She told the jury that it occurred 18 to 20 times, most of them when she was living at Fitzgerald's house. She also testified that on other occasions Fitzgerald tried to touch her genitals. On one occasion, Fitzgerald touched her butt on the outside of her clothing and, on a different occasion, he touched her "bad spot" while they were in Fitzgerald's kitchen. C.C. said no one else was present during the sexual abuse. She did not tell anyone initially because Fitzgerald said that he would "whoop" her if she did.
Defense counsel's cross-examination of C.C. and K.L. focused on the number of people living in the small house with Fitzgerald and his wife, Heather. The defense also established that neither Heather nor K.L.'s boyfriend, who was among those living at the house, was employed during the relevant time period, suggesting it would have been difficult for C.C. and Fitzgerald to be alone as often as C.C. described.
The State's evidence also included video of C.C.'s interview with Cochran and testimony from Cochran about his investigation. In addition, the Chief of the Spring Hill Police Department, Richard Mann, testified that he had encountered Fitzgerald while investigating a separate allegation of rape and indecent liberties with a child in July 2002. At that time, Fitzgerald confessed to having sex with his 13- and 15-year-old cousins.
Fitzgerald's only witness was Heather. She supported the defense theory that it would have been impossible for C.C. and Fitzgerald to be alone as C.C. described. Heather told the jury that her grandmother-in-law "never [left] the house," and "[K.L.'s] five [children], plus me, and my husband, our two kids, his grandmother and, after February, his mom" lived in the house in the same time frame. Heather also testified she had taken time off from October to the middle of January to take care of her own daughter, and C.C.'s father was at the house much of the time because he lived there and was "usually always drinking" instead of working. She said K.L. was gone only for her four-hour work shifts. She also said C.C. could not have been alone in the bedroom with Fitzgerald because "I [do not] allow kids in my room."
Heather also testified that C.C. would call and want to come over after she and her family moved out. According to Heather, Fitzgerald would take C.C. into his room and put a movie on for her; Fitzgerald would leave the door "open the entire time"; and he would come out of the room immediately after he started the movie. When C.C. would come over, Fitzgerald's grandmother and Heather were always home. Heather also said many people visited the house during that period and usually brought their children. No one ever expressed concerns to her about Fitzgerald, even though some of them knew Fitzgerald had admitted to sexually abusing members of his family.
The prosecutor cross-examined Heather about statements she had made to Cochran that C.C. could have been alone with Fitzgerald more than 50 times. Heather said she did not remember saying that. On redirect, Heather testified that when she watched the video of C.C.'s interview with Cochran, she initially thought C.C. was telling the truth; but, as she watched more of it, it became apparent to her that C.C. was lying.
The parties' closing arguments also focused exclusively on whether Fitzgerald engaged in sodomy with C.C.-not on whether he caused her to engage in sodomy with a third person.
Neither party objected to the jury instructions that listed the elements of aggravated criminal sodomy:
"Instruction Number 3: The Defendant is charged with aggravated criminal sodomy. The Defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. The defendant engaged in sodomy with [C.C.], who was less than 14 years old. The State need not prove the defendant knew the child's age.
"2. The Defendant had [C.C.] engage in oral contact with his male genitalia intentionally, knowingly, or recklessly.
*501 "3. The Act [o]ccurred on or about the 1st day of January, 2013, and the 28th day of February, 2013, in Cowley County, Kansas.
" 'Sodomy' means ... oral contact of the male genitalia....
"Aggravated criminal sodomy means: (1) sodomy with a child who is less than 14 years old; (2) causing a child less than 14 years old to engage in sodomy with any person...."
The district court also separately instructed the jury that the "State must prove that the Defendant had [C.C.] engage in oral contact with his male [genitalia] intentionally, or knowingly, or recklessly."
The jury found Fitzgerald guilty of aggravated criminal sodomy, and the district judge gave Fitzgerald a life sentence.
On appeal, the Court of Appeals reversed Fitzgerald's conviction, relying on State v. Laborde , 303 Kan. 1, 360 P.3d 1080 (2015), and State v. Dickson , 275 Kan. 683, 69 P.3d 549 (2003). The panel characterized Dickson as "a nearly identical case." State v. Fitzgerald , No. 112,492, 2015 WL 9458718, at *2 (Kan. App. 2015). The State petitioned this court for review, arguing that Dickson was "wrongly decided and wrongly applied." In addition, in the State's view, any error in the charging document was not reversible, because it informed Fitzgerald of the accusation he must defend against.
The State's petition was filed before this court handed down its decision in State v. Dunn , 304 Kan. 773, 375 P.3d 332 (2016), which reformed the analysis on charging document error. Thus, after granting review, we asked the parties to submit briefs to "address the type of charging document insufficiency being alleged and 'any additional or distinct role that federal or state constitutional due process and notice principles play in determining charging document insufficiency' " and apply Dunn, 304 Kan. at 814, 375 P.3d 332, State v. Wright , 290 Kan. 194, 224 P.3d 1159 (2010), and State v. Brown , 295 Kan. 181, 284 P.3d 977 (2012), to this case.
In its supplemental brief to this court, the State argued that Fitzgerald failed to preserve any challenge to the charging document; that he was properly charged with aggravated criminal sodomy; alternatively, that any error in the charging document was harmless; and that there was no alternative means super-sufficiency issue because Fitzgerald's jury was instructed on only one statutorily defined means of committing aggravated criminal sodomy, and the means instructed upon were amply supported by evidence.
Fitzgerald's supplemental brief redirected the court's attention to his actual appellate challenge-insufficiency of evidence to support the alternative means of aggravated criminal sodomy charged rather than the one instructed upon. Under Dunn , Fitzgerald argued, he was not alleging a defect in the charging document. He was alleging a defect in the proof supporting the verdict on the crime charged.
DISCUSSION
We agree with Fitzgerald's framing of the issue in this case. The State successfully charged Fitzgerald under K.S.A. 2017 Supp. 21-5504(b)(2), which prohibits "causing a child under 14 years of age to engage in sodomy with any person." This court has held that the use of "any person" in the identically worded predecessor statute means "a person other than the defendant." See Dickson , 275 Kan. at 693, 69 P.3d 549. And we decline the State's invitation to overrule Dickson today.
In contrast, the jury instructions were based on the language of K.S.A. 2017 Supp. 21-5504(b)(1), which prohibits "[s]odomy with a child who is under 14 years of age." This is the statutory subsection that governs situations in which the defendant engages in sodomy with the victim. Dickson , 275 Kan. at 689-92, 69 P.3d 549 ; see also State v. Brown , 295 Kan. 181, 196, 200-01, 284 P.3d 977 (2012) (aggravated indecent liberties statute with comparable structure sets out alternative means; different subsections contain distinct material elements; some require participation of third person while others do not).
In State v. Dunn , we outlined three types of "charging document insufficiency a criminal *502 defendant may challenge." 304 Kan. 773, 815, 375 P.3d 332. The first type of insufficiency implicates the Kansas Constitution's requirements for alleging the correct court and territory. The second type of insufficiency concerns whether the charging document contains enough facts to constitute a crime. The third type of insufficiency focuses on whether the charging document complies with federal and state constitutional requirements for due process and notice. 304 Kan. at 815, 375 P.3d 332.
Fitzgerald is correct that the charging document in this case suffers from none of the infirmities we identified in Dunn . And this is not a case, as the State asserts, ripe for application of K.S.A. 22-3201(b), which provides that "[e]rror in the citation or its omission shall not be ground for ... reversal of a conviction if the error or omission did not prejudice the defendant." This statute controls when we are faced with an erroneous or missing citation. See State v. Wright , 221 Kan. 132, 140, 557 P.2d 1267 (1976) (information's language properly taken from correct statute; defendant received adequate notice of charge despite typographical error in citation). Fitzgerald's charging document had neither. It contained an accurate description of one means to commit aggravated criminal sodomy and an accurate citation to the subsection of the statute governing that means.
The actual problem in this case is exactly the same as that confronted by this court in Laborde , 303 Kan. at 2, 360 P.3d 1080.
In that case, the State charged defendant Jodie Laborde with theft by deception, but all parties proceeded from that point forward as though Laborde was on trial under a different theory-theft by unauthorized control. Both parties submitted jury instructions on theft by unauthorized control, and Laborde was found guilty. On appeal, Laborde argued there was insufficient evidence to convict her of the theft by deception that had been charged. 303 Kan. at 5, 360 P.3d 1080. We reversed Laborde's conviction, observing that the State failed to prove one of the elements of theft by deception. 303 Kan. at 7-8, 360 P.3d 1080. We specifically noted that "[p]rosecutions in this state are based on the charging document, which may be a complaint, indictment, or information," citing K.S.A. 22-3201(a). 303 Kan. at 6, 360 P.3d 1080.
Today the statute we referenced in Laborde remains in effect, and the maxim it recites remains true, despite the changes wrought by Dunn since Laborde was decided. The Kansas Constitution may endow district courts with subject matter jurisdiction over criminal cases generally. See Dunn , 304 Kan. at 810-11, 375 P.3d 332. But the charging document in any specific case still sets the outer limits of the conviction or convictions that can result. See State v. Ward , 307 Kan. 245, 259-60, 408 P.3d 954 (2018) (State failed to prove crimes charged, regardless of whether it may have proved another crime; conviction reversed).
With Laborde as the baseline, we turn to analysis of the sufficiency question actually raised by Fitzgerald. Our standard of review is well known.
"When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." State v. Lloyd , 299 Kan. 620, 632, 325 P.3d 1122 (2014).
We acknowledge at the outset that this case does not present a typical sufficiency challenge. We are not concerned here with whether the State's proof measured up under the elements instruction given for a crime. We must instead decide if the State proved the crime it charged.
In this case, Fitzgerald was charged with causing C.C. "to engage in oral copulation with another person" under K.S.A. 2017 Supp. 21-5504(b)(2).
This statute "demands a specific kind of proof from the State." Laborde , 303 Kan. at 6, 360 P.3d 1080. That proof is not the same as the entirely sufficient evidence the *503 State marshaled and presented of Fitzgerald causing C.C. to engage in sodomy with him. See Dickson , 275 Kan. at 694-95, 69 P.3d 549. Under these circumstances, we are compelled to reverse Fitzgerald's conviction as unsupported by sufficient evidence of the crime the State charged. The error of insufficiency is not amenable to review for harmlessness. See State v. Wright , 290 Kan. 194, 205-06, 224 P.3d 1159 (2010) (sufficiency error never subject to harmlessness inquiry) (quoting Beier, Lurching Toward the Light: Alternative Meansand Multiple Acts Law in Kansas , 44 Washburn L.J. 275 [2005] ), disapproved of on other grounds by State v. Brooks , 298 Kan. 672, 317 P.3d 54 (2014).
One closing note: As described above, the State advanced several arguments we have rejected-about the soundness of Dickson , about the sufficiency of the charging document, about the applicability of K.S.A. 22-3201(b) on charging documents' erroneous or omitted citations. As in Laborde , it has not argued instruction error, constructive amendment, or variance. It has not supported any such argument with statutory, common law, or constitutional authority. Discussion of the applicability or the merit of any such arguments in a situation such as the one before us awaits another case.
The Court of Appeals decision is affirmed. The judgment of the district court is reversed.
Biles, J., concurring in the result.