NOT DESIGNATED FOR PUBLICATION

No. 117,256

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KRISTOPHER WILLIAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed May 25, 2018. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., BUSER AND GARDNER, JJ.

PER CURIAM: Kristopher Williams was found guilty of three counts of aggravated burglary, two counts of aggravated robbery, two counts of kidnapping, and one count each of simple robbery and aggravated assault in one case; one count each of robbery and felony interference with law enforcement in a second case; and one count of aggravated robbery in a third case. He was sentenced to a total prison term of 32 years followed by 36 months of postrelease supervision. Williams' appeals were consolidated and we now consider them as a single appeal. Williams contends that the district court erred in not suppressing his confession as to one of the robberies, that insufficient evidence supports

1

his conviction of aggravated robbery of the Subway restaurant, and that the jury was improperly instructed as to interference with law enforcement. Finding no error, we affirm.

*Factual and procedural background*

We begin by summarizing the five robberies underlying this appeal.

*Case 16 CR 1245: The Subway robbery*

Zaqoiya Smith was working alone at a Subway restaurant on November 27, 2015. Around 9 p.m., two men entered the restaurant with the hoods of their sweatshirts over their heads. While Smith prepared the order for one of them, the other man busied himself around the store, at one point fumbling through a stack of job applications. Moments later, the men came behind the counter, one of them with a gun, and demanded money. Smith gave the men money from the register and a safe. The two men took the cash and Smith's cell phone, and left the store before police arrived.

Store surveillance video recorded the robbery. Smith told officers about the incident, including that one of the men had touched the display containing job applications. A crime scene investigator obtained a fingerprint from the display and it was found to belong to Tyler Phillips, Williams' cousin. The surveillance video revealed that Phillips was the assailant with the firearm during the robbery.

After arresting Phillips, police interviewed Williams about the robbery. At that time, Williams was in custody on suspicion of having committed another robbery. Williams confessed to his involvement in the robbery, but he asserted that he was not the individual with the handgun.

2

*16 CR 153: The ATM robberies*

This case consists of three robberies, three aggravated burglaries, two kidnappings, and an aggravated assault, as detailed below.

A. *Javier Villegas*

When Javier Villegas returned home from work at approximately 7 p.m. on December 14, 2015, he observed two men in hooded sweatshirts in the parking lot of his residential complex. One of the men called over to Villegas and asked to use his cell phone, but Villegas ignored him and went inside. As Villegas opened his door, his dog went outside so Villegas followed it. One of the men approached Villegas, again requesting to use his phone. A second man came up, pointed a gun at Villegas, and ordered Villegas not to look at him. The men demanded his wallet and Villegas gave it to them. There was no cash in the wallet, only a debit card and a credit card, so the men ordered Villegas to drive them to an ATM. Villegas drove to an ATM with the armed man seated directly behind him and the other man in the passenger seat next to him.

At the ATM, Villegas withdrew $500. Even though Villegas was not able to withdraw money from a second card, the two men continued to demand more money and ordered Villegas to drive to another ATM. When they got there, one of the men remarked that Villegas could likely withdraw only $500 per day. The men then told Villegas to keep driving, directing him through a series of turns before ordering Villegas to stop, pointing a gun at him, and exiting Villegas' vehicle. Villegas immediately contacted 911, met with police, and gave them a description of the encounter and the assailants.

B.  *Alexis Caldwell*

Alexis Caldwell pulled into her apartment complex's parking lot at 12:30 a.m. on December 29, 2015. While she was still in her vehicle, a man knocked on her passenger side window. Caldwell rolled her window down slightly and the man asked what time it was. She rolled the window up but remained in the vehicle because she did not want the man to see which apartment she lived in. Shortly after, the same man knocked on Caldwell's driver's side window and Caldwell saw that he had a gun. The man asked whether she had a phone, and she replied that she did not. The man pointed the gun at her and ordered her to unlock the doors. The armed man got in the back seat and a second man sat in the front passenger seat.

The man in the passenger seat went through her purse while the man in the back seat continued to point the gun at her. The gunman told Caldwell to drive them to her bank to withdraw cash. Caldwell tried to stall, then began to drive toward the bank. Caldwell noticed another vehicle pulling out of a parking space, so she sped up, intending to hit the other vehicle to end the encounter with the men in her car. The other driver saw Caldwell coming, though, and pulled back into the parking space before Caldwell could make contact. Caldwell's tires slid on the icy pavement and her car began to swerve. She stopped the car, put it in park, grabbed her keys, and jumped from the vehicle. Both men exited the vehicle as well, and the armed man pointed the gun at Caldwell and told her to get back in the vehicle. Caldwell instead pressed the key's panic button, causing the alarm to go off and the men to flee. Caldwell then got back into her vehicle, drove to a nearby hotel, and called 911. A few weeks later, Caldwell identified Williams from a photo lineup as the armed man.

C. *Jody Swehla*

On December 29, 2015, Jody Swehla went to an ATM with her infant daughter and young nephew and then returned home. She parked her car and walked to the mailbox, temporarily leaving her daughter and nephew in the vehicle. Swehla saw one man approaching her and a second man entering her vehicle. The man that approached Swehla grabbed her shirt and told her everything would be okay as long as she cooperated. She saw the second man get out of her car and walk away with her purse. Once he did so, the first man released her and walked with the second man to a dark colored vehicle parked nearby.

With her cell phone and car keys gone, Swehla flagged down a passing vehicle to call 911. Her phone was found in a nearby yard shortly after police arrived. Police lifted a fingerprint from the phone and later identified the fingerprint as Williams'. Swehla identified Williams from a photo lineup as the assailant that had approached her.

*16 CR 1216: The Lucky Spot robbery*

On April 29, 2016, Dennis Dunnegan went to the Lucky Spot to play various gaming machines and won $160. Dunnegan left, walking to the parking lot around midnight. When he got to his car, two men approached and ordered him to give them his wallet. Dunnegan turned and ran but the men chased him and tackled him from behind. The men tried to remove Dunnegan's wallet from his pocket but had trouble, so one of them men inquired whether they should just "do him in." Soon after, the men succeeded in taking the wallet and walked across the street. One of them ran back and told Dunnegan that they did not rob him, but they were just collecting money he owed them. Dunnegan testified that he did not owe them money and had never seen the men before. Dunnegan yelled after the man with his wallet at least to give him back his driver's

5

license. The two men emptied the wallet of the cash and ran away. Dunnegan went inside the Lucky Spot and called police.

Dunnegan told police one of the men was wearing a gray hooded sweatshirt, green athletic shorts, and a baseball cap. Police viewed the surveillance video from the Lucky Spot and saw an individual that matched Dunnegan's description. A customer stated that the suspect was a patron of the Lucky Spot and lived nearby. When two officers responded to that address, they saw a man, later identified as Williams, wearing clothing that matched that of the suspect. When the man saw the officers, he immediately went inside the house and shut the door behind him. Officers knocked on the door until the man answered. The officers engaged the man in a conversation about the incident that occurred at the Lucky Spot, then explained that he matched the description and the surveillance video. When officers told the man he was under arrest, he was noncompliant and resisted their efforts to take him into custody.

Before taking Williams to jail, police arranged for Dunnegan to view Williams. Dunnegan confirmed that Williams was one of his assailants.

*Trial*

Williams was first charged for his participation in cases 16 CR 153 and 16 CR 1216—the ATM robberies and the Lucky Spot robbery. While in custody for those cases, Williams admitted to his involvement in the Subway robbery and he was subsequently charged in 16 CR 1245—the Subway robbery. Before trial, Williams filed a motion to suppress seeking to exclude his incriminating statements regarding his culpability for the Subway robbery. The court denied that motion after a hearing.

The case proceeded to trial, and the jury found Williams guilty of three counts of aggravated burglary, two counts of aggravated robbery, two counts of kidnapping, and

one count each of simple robbery and aggravated assault in case 16 CR 153; one count each of robbery and felony interference with law enforcement in case 16 CR 1216; and one count of aggravated robbery in case 16 CR 1245. Williams was sentenced to a total prison term of 32 years followed by 36 months of postrelease supervision. Williams timely filed separate notices of appeal, which were consolidated and docketed as a single consolidated appeal. Williams raises three issues on appeal.

*Did the district court err by failing to suppress the confession tainted by an unlawful interrogation?*

Williams filed a motion to suppress before trial, seeking to exclude the statements he had made to law enforcement regarding the Subway robbery. The court conducted a hearing on the motion, during which Detective Tony Supancic—the officer to whom Williams had made the statements—testified.

At the time of Williams' statements, no charges had been filed in the Subway robbery. With two officers present, Williams waived his *Miranda* rights. First, Detective William Crowe spoke with Williams regarding the ATM robberies, for which Williams had already been charged. Following Crowe's questioning, Supancic asked Williams about his knowledge of the Subway robbery. Shortly after the discussion commenced, Williams chuckled and told Supancic, "Well that I did I admit to that." After this confession, the State charged Williams in case16 CR 1245.

Defense counsel asserted that Williams' confession should be suppressed as fruit of an unlawful interrogation by Crowe. He argued that because Williams was represented by an attorney on the two cases assigned to Crowe—the ATM robberies and the Lucky Spot robbery—it was unlawful for Crowe to engage in any discussion with Williams regarding those cases without his attorney present. Williams argued that Crowe's illegal

7

interview by Crowe tainted Supancic's subsequent interview with Williams, requiring suppression of Williams' confession to the Subway robbery.

The court declined to suppress the statements Williams made to Supancic. The court found that any errors regarding Crowe's questioning did not mandate suppression of Williams' incriminating statements made to Supancic, as they involved events for which no charges had yet been filed and for which Williams had not been appointed counsel. Williams seeks review of the district court's denial of his motion to suppress.

*Standard of Review*

In reviewing a district court's decision on a motion to suppress, we apply a bifurcated standard. We review a district court's factual findings under a substantial competent evidence standard, but we review the ultimate legal conclusion drawn from those facts de novo. We do not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015). See also *State v. Lewis*, 299 Kan. 828, 835, 326 P.3d 387 (2014) (applying bifurcated standard when determining whether an interrogation is custodial in nature); *State v. Gibson*, 299 Kan. 207, 215-16, 322 P.3d 389 (2014) (motion to suppress inculpatory statements).

*Preservation*

Where, as here, the district court has denied a motion to suppress, the moving party must also object to the introduction of that evidence at the time it is offered at trial to preserve the issue for appeal. *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014). Williams asserts that he did so here during a bench conference. But the evidence shows that Williams did not make any specific and contemporaneous objection during trial. Instead, counsel accepted the fact that the evidence was going to come in and

8

expressly and repeatedly spoke of Williams' admission as part of her defense strategy, likely hoping to show that Williams was credible or responsible. This is shown in counsel's opening statement, her comments during the relevant bench conference, her lack of objection to Supancic's testimony about Williams' admission, and her closing argument, as we detail below.

In her short opening statement, defense counsel began by stating:

> "Ladies and gentlemen, my client, Kristopher Williams, when he was confronted by law enforcement and asked about the multiple robberies, he said, 'I did the Subway robbery. I did that one.' And he admitted to it and he took responsibility. The other robberies, he said he didn't have anything to do with."

During a bench conference at trial, the State voiced its understanding that, in light of the court's refusal to suppress the statements, defense counsel was now okay with all of Williams' statements—the inculpatory and the exculpatory—being presented to the jury. When the court asked defense counsel her position, she responded: "[I]t was the position of the defense that the violation of the Sixth Amendment tainted the entire interview, both from Detective Crowe and Supancic. And based on the court making a finding that it did not, we're fine with everything coming in." That conversation concluded with the court's clarification that Williams did not object to the State's introduction of his statements about the Subway robbery:

> "THE COURT: Okay. Well, at this stage, what I hear the defense saying is you're not objecting to that testimony coming in. It is exculpatory in nature, I believe, as I recall the statement. Is that a fair—
> "[DEFENSE COUNSEL]: No. We are not objecting to those coming in."

True to her word, when the State called Supancic to testify about Williams' admission of his involvement in the Subway robbery, defense counsel made no objection

9

to any part of his testimony. And in her closing argument, defense counsel's last statement to the jury was that Williams "admits to the Subway robbery but not to the others."

By using Williams' statements as part of her trial strategy, defense counsel waived any objection to its admission. Because this issue was not preserved for our review, we do not determine whether the district court erred in suppressing the statements Williams made to Supancic.

*Was Williams' aggravated robbery conviction of the Subway restaurant supported by sufficient evidence?*

In the Subway robbery, Phillips was armed but Williams was not. Although Williams does not contest his involvement in the Subway robbery, he argues that because he had no weapon, he could not be convicted of aggravated robbery under the specific instructions given to the jury.

*Standard of Review*

In a criminal case, when the sufficiency of evidence is challenged, this court reviews the evidence in a light most favorable to the State to determine if a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). Only in cases where the testimony indicates that no reasonable fact-finder could find guilt beyond a reasonable doubt will a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

*Analysis*

To sustain a conviction for aggravated robbery for the Subway robbery, the State was required to establish four elements: (1) Williams knowingly took property from the presence of Zaqoiya Smith; (2) the taking was by threat of bodily harm to Smith; (3) Williams was armed with a dangerous weapon; and (4) this act occurred on or about November 27, 2015, in Sedgwick County, Kansas. The jury was also instructed on the theory of aiding and abetting. An individual aids or abets another if he or she "advises, hires, counsels or procures the other to commit the crime or intentionally aids the other in committing the conduct constituting the crime." K.S.A. 2017 Supp. 21-5210(a).

Williams admits that evidence supports a finding that Phillips, by virtue of being armed with a deadly weapon, committed aggravated robbery. Williams further admits that evidence supports a finding that Williams was guilty of aiding and abetting Phillips. But he contends the elements instruction which required the jury to find that "Kristopher Williams was armed with a dangerous weapon" precluded an aggravated robbery conviction unless Williams himself was shown to be armed with a dangerous weapon. Williams contends the State should have instructed the jury to find that Williams, "or another for whose conduct he was criminally responsible, was armed with a dangerous weapon," as in *State v. Potts*, 304 Kan. 687, 694-95, 374 P.3d 639 (2016). But Williams has raised no claim of error as to the instructions relating to this charge, and he challenges solely the sufficiency of the evidence.

We read all the instructions together and do not isolate any one instruction, as Williams invites us to do here. See *State v. Brice*, 276 Kan. 758, 761, 80 P.3d 1113 (2003). The jury would have done the same, so it would have read the aggravated robbery elements instruction together with the aiding and abetting instruction.

11

The aiding and abetting statute makes clear that an unarmed defendant may nonetheless be responsible for the armed defendant's crimes, thus "it is not necessary for both defendants to possess a gun to justify both being convicted of aggravated robbery." *State v. Johnson & Underwood*, 230 Kan. 309, 311, 634 P.2d 1095 (1981); see K.S.A. 2017 Supp. 21-5210(a). Williams concedes that the evidence shows that Phillips was armed with a deadly weapon and also shows that Williams was guilty of aiding and abetting Phillips. Phillips was the principal whom Williams aided and abetted. Although the language used in *Potts* may be more desirable, that language is not legally necessary to find Williams guilty of aggravated robbery under the instructions given here, when read together. Thus, sufficient evidence supports Williams' conviction for the aggravated robbery of the Subway restaurant.

*Was the jury instruction for interference with law enforcement erroneous?*

Williams' final argument on appeal challenges the district court's jury instruction for interference with law enforcement.

When Williams was apprehended at his house by law enforcement officers following the robbery at the Lucky Spot, he resisted arrest. This led to a struggle that required multiple officers to subdue him and place him under arrest. Williams was subsequently charged with interference with law enforcement.

Interference with law enforcement may be a misdemeanor or a felony offense. K.S.A. 2017 Supp. 21-5904(a)(3), (b)(5). For the crime to be a felony, an offender's interference must relate to an officer's discharge of duties "in the case of a felony." K.S.A. 2017 Supp. 21-5904(b)(5)(A). The instruction given for the crime of interference with law enforcement mirrored PIK Crim. 4th 59.040:

"Kristopher Williams is charged in Count two in 16 CR 1216 with interference with law enforcement by obstructing official duty. Kristopher Williams pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. [The officer] was discharging an official duty, namely making an arrest.

"2. Kristopher Williams knowingly resisted [the officer] in discharging that official duty.

"3. The act of Kristopher Williams substantially hindered or increased the burden of the officer in the performance of the officer's official duty.

"4. At the time Kristopher Williams knew or should have known that [the officer] was a law enforcement officer.

"5. This act occurred on or about the 29th day of April 2016, in Sedgwick County, Kansas."

Williams claims that the court failed to include the element that characterizes the offense as a felony rather than a misdemeanor—that law enforcement was trying to arrest him for a felony—and that this is structural error requiring reversal of his conviction.

*Structural error*

Williams contends that by intentionally following the PIK instruction the district court directed a verdict "on the misdemeanor or felony designation of a conviction" and thus committed structural error, citing *Rose v. Clark*, 478 U.S. 570, 578, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986) (stating "harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury"), and *Brice*, 276 Kan. 758, Syl. ¶ 2 (holding a trial court commits reversible error when it instructs the jury that as a matter of law an element of the offense charged has been established by the evidence). Here, however, the district court neither directed a verdict for the prosecution nor instructed the jury that an element had been established by the evidence.

13

Our court in *State v. Scott*, 28 Kan. App. 2d 418, 17 P.3d 966 (2001), approved the felony obstruction instruction patterned after what was then PIK Crim. 3d 60.09, despite the absence of the felony component of the crime, stating:

> "Use of PIK Crim. 3d 60.09 is favored when the State charges obstruction of an officer in the discharge of his or her duty. An instruction on the elements of the underlying felony is unwarranted when all of the instructions coupled with the evidence at trial clearly specify the crime charged." 28 Kan. App. 2d 418, Syl. ¶ 5.

This holding applies here because the underlying felony and the obstruction charge were tried together and there was no confusion as to the fact Williams was being arrested for felony robbery when he obstructed the officer in performing his official duty. The misdemeanor or felony nature of the Lucky Spot robbery was not contested. We are thus not persuaded that any error occurred.

But even assuming some error, we do not agree that an omission in this elements instruction is the kind of error that constitutes structural error. See *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (distinguishing a structural defect affecting the framework within which the trial proceeds from an error in the trial process itself). Any error here is less like a directed verdict and more like an instructional error held to be nonstructural, such as omitting an element of an offense, *Neder v. United States*, 527 U.S. 1, 8-10, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), or erroneously instructing the jury on an element of the offense other than reasonable doubt, *Yates v. Evatt*, 500 U.S. 391, 402-07, 111 S. Ct. 1884, 114 L. Ed. 2d 432 (1991).

*Invited error*

Because Williams did not object to the instructions at trial, we would normally evaluate whether the instructions at issue were clearly erroneous. See *State v. Williams*,

14

295 Kan. 506, 514-15, 286 P.3d 195 (2012). But the State contends that the invited error doctrine applies. We agree. Because Williams requested the version of the instruction ultimately given to the jury by the court, he cannot now claim error.

A litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Our courts have declined to apply the invited error doctrine when the defendant merely acquiesced to a jury instruction, but "when a defendant actively pursues what is later argued to be an error, then the doctrine most certainly applies. See *State v. Angelo*, 287 Kan. 262, 279-80, 197 P.3d 337 (2008)." *State v. Sasser*, 305 Kan. 1231, 1236, 391 P.3d 698 (2017).

During the jury instructions conference, the judge asked the parties to respond not only whether they objected to each instruction but also whether they wanted to request that specific instruction. When the court reviewed the elements instruction for interference with law enforcement, Williams' counsel responded that she did not object to the instruction and that she requested the instruction. Williams has thus waived appellate review of this instruction.

Affirmed.